

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-266-CV

JANE DOE, INDIVIDUALLY AND                                    APPELLANT
AS NEXT FRIEND FOR SALLY DOE,
A MINOR

V.

TEXAS ASSOCIATION OF
SCHOOL BOARDS, INC. AND
TEXAS ASSOCIATION OF SCHOOL
BOARDS RISK MANAGEMENT FUND                                  APPELLEES

------------

## FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

### Introduction

In one issue, appellant Jane Doe, individually and as next friend for her daughter Sally Doe, a minor, appeals the trial court's order granting the summary judgment motions of appellees Texas Association of School Boards,

Inc. (TASB, Inc.) and Texas Association of School Boards Risk Management Fund (TASB RMF). We affirm.

## Background Facts

Appellant alleges the following facts. While John Paul Emenhiser was employed with the Denton Independent School District (DISD) as a bus driver, he befriended and took pictures of young girls assigned to his route, including Sally Doe.[1] In 2000, while Sally was nine years old, Emenhiser sexually assaulted her. In 2001, using information and authority he had gained through his position as Sally's bus driver,[2] Emenhiser again sexually assaulted her while she was alone in her home.

In December 2003, appellant filed suit against Emenhiser, seeking compensatory and exemplary damages for Emenhiser's assaults against Sally. Later, appellant amended her suit to add DISD as a defendant.[3] On February

---

[1] Because of the sensitive nature of this case, fictitious names will be used throughout this opinion to protect the identities of the victimized parties. *See Patterson v. State*, 46 S.W.3d 294, 298 n.1 (Tex. App.—Fort Worth 2001, no pet.).

[2] Specifically, appellant alleged that because of Emenhiser's employment with DISD, he had access to the location of students' residences, their parents' work schedules, and their siblings' probable whereabouts.

[3] Appellant contended that DISD entrusted Emenhiser with information and that DISD had knowledge of Emenhiser's "unnatural interest in both children and pornography."

14, 2007, after appellant settled her claims against DISD, the trial court severed those claims from her remaining claims against Emenhiser. On June 28, 2007, appellant filed her third amended petition, which maintained her claims against Emenhiser and joined appellees[4] (who provided liability coverage for DISD) as defendants. The suit against appellees sought a declaration[5] that Emenhiser is an insured under the coverage appellees provided to DISD in a Sexual Misconduct Claims Endorsement to an interlocal participation agreement; therefore, appellees are obligated to defend him and satisfy any judgment obtained against him. In July 2007, appellees filed their answer to appellant's claims. In November 2007, appellees filed a traditional motion for summary judgment against appellant.

The evidence attached to appellees' motion established that DISD entered into an interlocal participation agreement with appellees so that appellees would

---

[4] TASB, Inc. is the program administrator of TASB RMF. While both TASB, Inc. and TASB RMF are appellees in this appeal, the only issue presented by appellant is whether the trial court erred by granting TASB RMF's motions for summary judgment. In her brief and at oral argument, appellant admitted that summary judgment was properly granted to TASB, Inc. because it was not a party to the interlocal participation agreement with DISD. Because of this admission, and because our review of the evidence confirms that TASB, Inc. was not a party to the agreement, we will affirm the summary judgment entered in TASB, Inc.'s behalf. For simplicity, however, in this opinion we will refer to TASB, Inc. and TASB RMF collectively as "appellees."

[5] Appellant filed the suit under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (Vernon 2008).

provide coverage and a defense for several types of DISD's property or casualty

risks. In connection with the agreement, appellees issued a Sexual Misconduct

Claims Endorsement that outlined particular situations in which coverage would

apply (up to a $5,000,000 limit) when DISD or its employees were accused of

sexual misconduct with a student. The relevant parts of the Sexual Misconduct

Claims Endorsement state that coverage applied to

> 1.    Claims made by or on behalf of students or by employees
> against a **Program Participant** [DISD] or any . . . employee . . . of
> such **Program Participant** . . . arising out of allegations of sexual
> misconduct, harassment, molestation or abuse; and exclusions
> relative to sexual misconduct do not apply. All Exclusions that
> would otherwise apply remain applicable.
>
> This coverage shall not apply when a **Program Participant** or any
> . . . employee . . . has allegedly engaged in any acts . . . that
> violate any criminal law where such alleged criminal acts . . . have
> resulted in the filing or obtaining of a criminal charge and
> information or indictment against any **Program Participant** or any
> . . . employee . . . of such **Program Participant**.
>
> . . . .
>
> 2.    Claims made by or on behalf of students . . . against a
> **Program Participant** or any . . . employee . . . arising out of
> allegations that a **Program Participant** . . . negligently employed,
> trained, investigated, reported, supervised or retained a person
> engaged in sexual misconduct, harassment, molestation, or abuse.
> Exclusions relative to sexual misconduct do not apply.
> All Exclusions that would otherwise apply remain applicable.
>
> 3.    Claims based on any allegation that a **Program Participant** or
> any . . . employee . . . engaged in a practice, custom, or policy that
> constitutes a violation of a civil right that caused or contributed to

4

a claim of sexual misconduct. Exclusions relative to sexual misconduct do not apply. All Exclusions that would otherwise apply remain applicable.

Based on the language of the endorsement, appellees' motion contended that they had no obligation to defend Emenhiser because he engaged in criminal acts for which the policy excluded coverage.[6] The motion also contended that appellees were entitled to contractual indemnity from appellant based on language contained in the settlement agreement between appellant and DISD.[7] The settlement agreement (titled as a "Compromise Settlement Agreement, Release of All Claims and Indemnity Agreement") stated that

- the "incidents made the basis" of the lawsuit were Emenhiser's assaults of Sally;

- the "Releasing Parties" comprised appellant (individually and as Sally's next friend);

- the "Released Parties" were DISD and its "employees and representatives, except that [Emenhiser was] specifically excluded";

- appellant discharged the Released Parties from all present or future claims related to all injuries "directly or indirectly attributable to the

---

[6] The summary judgment evidence established that a Denton County jury convicted Emenhiser of indecency with a child, aggravated sexual assault, and sexual performance by a child; the jury sentenced him to ninety-nine years' confinement on the aggravated sexual assault charge.

[7] Other grounds for summary judgment asserted by appellees to the trial court, related to appellant's standing and an alleged statutory prohibition of appellant's suit, have been abandoned on appeal.

5

incident made the basis" of the lawsuit, "whether asserted in the lawsuit or not";

- the release applied to all "firms, corporations, [or] entities with whom [DISD has] been, [is] now, or may hereafter be affiliated";

- in exchange for the release and settlement of "disputed claims," appellees agreed to pay appellant and Sally a substantial sum of money over many years.

The settlement agreement also contained a section titled "INDEMNIFICATION."[8]

On the day they filed their summary judgment motion against appellant, appellees amended their answer to assert (1) the defenses included in their motion, (2) a counterclaim for a declaratory judgment (along with attorney's fees and costs) against appellant based on the indemnification language in the settlement agreement, and (3) a cross-claim against Emenhiser for a declaration that he was not insured under the interlocal participation agreement between appellees and DISD. Appellant filed a response to appellees' summary judgment motion, arguing that the claims against Emenhiser were covered under paragraphs two and three of the Sexual Misconduct Claims Endorsement and that the indemnification clause of the settlement agreement with DISD was ambiguous, did not apply to personal injury claims because such claims were

---

[8] The full contents of this section are set forth below.

6

not specifically delineated, and could not apply to Sally because appellant had no authority to enter into such a settlement agreement on Sally's behalf.

After appellees filed a reply to appellant's summary judgment response, the trial court granted appellees' motion.[9] Appellees then filed a motion for summary judgment as to their cross-claim against Emenhiser (who had filed a pro se answer to that claim);[10] the trial court granted this motion as well, and it ordered that the coverage document issued by TASB RMF to DISD "does not provide any coverage for the claims asserted against [Emenhiser] by [appellant]." In May 2008, appellant obtained a judgment against Emenhiser for $5,000,000. Appellant then filed notice of her appeal of the trial court's decision to grant both of appellees' summary judgment motions.

---

[9] Appellant contends that appellees did not prevail on their indemnity counterclaim through summary judgment because in its final judgment, the trial court denied appellees' claim for attorney's fees. However, the record reflects that the trial court granted the motion for summary judgment that contained arguments regarding appellees' indemnity counterclaim. And though the trial court did not specify that it granted summary judgment on the indemnity basis, when a trial court grants a general summary judgment, we must affirm the judgment if any of the theories that the prevailing party advanced at trial are meritorious. *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 36 (Tex. App.—Fort Worth 2002, no pet.).

[10] Appellees attached the same summary judgment evidence to this motion as to their previous summary judgment motion.

7

## The Propriety of the Summary Judgment

In her sole issue, appellant contends that the trial court improperly granted appellees' motions for summary judgment. She argues that the Sexual Misconduct Claims Endorsement requires appellees to provide coverage for Emenhiser and that her claims against appellees are not excluded by the indemnity provisions of the settlement agreement.

### Standard of review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215.

Summary judgment evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). However, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc.*

8

*v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).  Summary judgment is proper when parties do not dispute the relevant facts.  *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000).

**The criteria of contract interpretation**

The parties do not dispute evidentiary facts related to the Sexual Misconduct Claims Endorsement or the settlement agreement; rather, they differ in their interpretation of these documents.  Insurance policies and settlement agreements are both contracts, and such documents are governed by the same rules of construction applicable to all contracts.  *See Gray v. Nash*, 259 S.W.3d 286, 289 (Tex. App.—Fort Worth 2008, pet. denied); *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App.—Dallas 1992, writ denied); *see also Webb v. Lawson-Avila Constr., Inc.*, 911 S.W.2d 457, 461 (Tex. App.—San Antonio 1995, writ dism'd) (noting, however, that indemnity agreements are strictly construed in favor of the indemnitor).

When construing a written contract, our primary concern is to ascertain the true intent of the parties as expressed in the instrument*.  NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.); *see Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 79–80 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) (noting

that courts should not consider the "intention which the parties may have had, but failed to express in the instrument"). In doing so, we must examine and consider the entire contract in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *Potter*, 230 S.W.3d at 463; *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Contractual provisions should be considered with reference to the entire instrument; no single provision should control. *Webster*, 128 S.W.3d at 229; *Potter*, 230 S.W.3d at 463. Words in a contract must carry their ordinary, generally accepted meaning unless the contract itself shows that the terms have been used in a technical or different sense. *See Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976). In construing a contract, we may not rewrite it nor add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). Also, we must weigh that parties to a contract

> are considered masters of their own choices. They are entitled to select what terms and provisions to include in a contract before executing it. And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner *they* choose.

*Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.).

A contract is unambiguous if it can be given a definite legal meaning; if it is subject to two or more reasonable interpretations, it is ambiguous, creating a fact issue on the parties' intent. *Webster*, 128 S.W.3d at 229; *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). However, lack of clarity does not necessarily create an ambiguity, and neither does a mere disagreement between the parties. *See Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) (adding that whether "a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered"); *see also City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex. App.—Fort Worth 2008, no pet. h.) (explaining that when "the meaning of a contract is unambiguous, a party's construction is immaterial"). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Conversely, the interpretation of an unambiguous contract is a matter of law to be determined by the trial court. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).

**Analysis**

We must strictly construe the parties' settlement agreement in favor of appellant using the normal rules of contract interpretation detailed above. *See id.*; *Webb*, 911 S.W.2d at 461.  The settlement agreement in dispute stated, in pertinent part,

> 3.01 It is expressly understood and agreed that the Releasing Parties have paid . . . all expenses . . . of any kid [sic] or character, past, present and future, alleged to be incurred as a result of the . . . incidents made the basis of this lawsuit . . . and the Releasing Parties hereby agree to indemnify, defend, and hold harmless the Released Parties **and TASB RMF from any and all claims or causes of action for the recovery of any expenses** . . . .  Such indemnification shall include, but is not limited to, claims arising from . . . any partial or sole intentional or negligent act or omission of any or all of the Released Parties **and TASB RMF**, and further includes the costs of defending against such claims . . . .  Such right of indemnity . . . **shall exist in favor of the Released Parties and TASB RMF** . . . .

> 3.02 For the consideration set forth above, **the Releasing Parties hereby agree to fully indemnify**, defend and hold harmless each of the Released Parties **and TASB RMF** from any and all claims . . . and causes of action of whatsoever nature or character, at law or in equity, past, present, or future, which may have been or which may hereafter be **asserted by any person**, firm, corporation, or other entity whomsoever claiming by, through, or **on behalf of the Releasing Parties, arising from the incident made the basis of this lawsuit**.  Such indemnification shall include but is not limited to, claims arising from, or amounts recovered based on claims arising out of any . . . negligent act or omission of any or all of the Released Parties **and TASB RMF** . . . . [Emphasis added.]

12

Appellant contends that though TASB RMF is specifically designated as a party to enjoy indemnity, this language does not require her (or Sally) to indemnify and hold harmless TASB RMF as to the claims she asserted against Emenhiser because (1) appellees are not among the "Released Parties" in the settlement agreement and therefore they do not have standing to enforce it; (2) the language is ambiguous in that it refers to the "incident" made the basis of her lawsuit, while her lawsuit described more than one assault and legal theories other than assault; (3) the language specifically excludes the claims against Emenhiser from those released, and it does not apply to Sally's direct claims; (4) the language does not encompass personal injury claims; and (5) Jane Doe does not have authority to enter any settlement or indemnification agreement that would bind Sally.

**Appellees have standing to enforce the indemnity provision**

In her reply brief, appellant contends that because TASB RMF was not a signing party to the settlement agreement, it has no standing to enforce the indemnity provision contained in it. A third party may recover on a contract made between other parties if the parties intended to secure a benefit to that third party and the parties entered into the contract directly for the third party's benefit. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *see S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007); *Haire v. Nathan Watson*

13

*Co.*, 221 S.W.3d 293, 301 (Tex. App.—Fort Worth 2007, no pet.). To qualify as an intended third-party beneficiary, a party may show that it is a "creditor" beneficiary of the contract. *Stine*, 80 S.W.3d at 589. An agreement benefits a "creditor" beneficiary if, under the agreement, performance will come to him in satisfaction of a legal duty (such as a contractual obligation or other legally enforceable commitment). *Id.* A third-party beneficiary does not have to show that the signatories executed the contract solely to benefit it as a noncontracting party. *Id.* at 591.

We conclude that the settlement agreement signals the signatories' intention to confer a benefit on TASB RMF as a creditor beneficiary because it (1) specifically states that TASB RMF shall be indemnified along with the Released Parties, (2) indicates (as recited in section 3.02 of the agreement) that such a designation was conferred because TASB RMF provided consideration by paying substantial sums to appellant (as acknowledged received by appellant in section 1.04), and (3) particularly mentions TASB RMF in several other parts of the agreement and obligates TASB RMF to abide by several of the agreement's terms, including payments already made and to be made in the future. *See Stine*, 80 S.W.3d at 589–91; *see also Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 795 (Tex. App.—Fort Worth 1996, no writ) (explaining that status as a third-party beneficiary may be created when the

14

"obligation to the third party is clearly and fully spelled out"). Because we conclude that the settlement agreement conferred standing on TASB RMF as a third-party beneficiary to the agreement, we hold that TASB RMF's exclusion as a signatory[11] to the agreement is inconsequential. *See City of Alton v. Sharyland Water Supply Corp.*, 145 S.W.3d 673, 682 (Tex. App.—Corpus Christi 2004, no pet.) (explaining that "[t]hird-party beneficiaries to a contract acquire the same rights and standing to enforce the contract as those held by one of the contracting parties"). Thus, summary judgment was not precluded on this ground.

**The settlement agreement is not ambiguous**

Next, we cannot agree with appellant that the indemnity provisions in the settlement agreement are ambiguous because paragraph 3.02 referred to the "incident made the basis of this lawsuit" while her pleading on file at the time of the agreement alleged multiple assaults and various legal theories. The recitals portion of the settlement agreement (paragraph A) dictates that the

---

[11] Though not a signatory, TASB RMF is a named party to the agreement because it is specifically included in the "RECITALS AND DEFINITIONS" portion of the agreement. We note than an argument could be made that TASB RMF was also a Released Party in the settlement agreement because through paragraph 1.02, the release applied to all "firms, corporations, and entities with whom the Released Parties . . . are now . . . affiliated." However, we need not resolve this appeal on that basis.

15

"incidents made the basis of this lawsuit" are the "assaults of [Sally Doe], a minor." Apart from pluralizing "incident," this exact language is used to describe the indemnified claims in section 3.02.

We conclude and hold that the agreement is not ambiguous. The striking similarity is sufficient to show the parties' intent as expressed in the instrument to include in section 3.02 all claims from any of Emenhiser's assaults against Sally, rather than one assault or the other and rather than some claims but not others.[12] Thus, we conclude that the singular term "incident" was nothing more than a typographical error. *See Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 247 (Tex. App.—Texarkana 2005, no pet.) (holding that the use of the word "client" instead of "clients" in a rule 11 agreement letter was not dispositive of the intention that multiple defendants be bound to a settlement agreement); *City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.3d 532, 539 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that typographical mistakes must "yield to the well-established doctrine that written contracts will

---

[12] In an attempt to limit the breadth of section 3.02 so that it would not cover her assault claims against Emenhiser, appellant contends in her brief that "reasonable minds could determine that 'the incident' referenced the civil rights violations which stemmed from [DISD's] failure to protect [a]ppellant from sexual harassment." However, this assertion is belied by the language contained earlier in section 3.02 indicating that indemnity applied to "causes of action of whatsoever nature or character."

16

be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document").

Our conclusion is strengthened by the fact that section 1.01 of the settlement agreement (under a portion of the agreement titled "RELEASE AND DISCHARGE") also refers to the singular "incident made the basis of this lawsuit" when describing the claims released in favor of DISD. If we were to hold that "incident" made section 3.01 ambiguous, we would also have to conclude that the same term is ambiguous in section 1.01. We cannot do so because we cannot conclude that reasonable minds would disagree as to whether, in a document partly titled "RELEASE OF ALL CLAIMS," the parties intended to discharge DISD from claims arising from both of the sexual assaults or only one of the two. *See Webster*, 128 S.W.3d at 229.

For these reasons, we reject appellant's argument that the settlement agreement is ambiguous because it refers to the "incident" rather than the "incidents" made the basis of her lawsuit. Thus, summary judgment was not prohibited on this ground.

**While the settlement agreement excludes Emenhiser from those released, it includes appellees as those indemnified; also, it applies to Sally's direct claims, if any**

Appellant next contends that because the settlement agreement excluded Emenhiser as a released party in three of its provisions,[13] appellant could not have intended to indemnify appellees for the claims against him. Specifically, appellant contends that there

> would be no reason to exclude Mr. Emenhiser from the release in three separate provisions if the parties intended to bar [Sally's] claims against Emenhiser because her mother agreed to indemnify the school district and TASB RMF for them. There would be no reason to indemnify TASB RMF for [a]ppellant's claims against Mr. Emenhiser but not release TASB RMF.

However, Emenhiser's exclusion in those three provisions is not made surplusage by the indemnity language, as appellant implies, because though the language grants appellees indemnity for such claims, it does not bar the claims that appellant continued to pursue against Emenhiser himself. In other words, the settlement agreement allowed appellant to obtain her $5,000,000 judgment against Emenhiser, but the indemnity provision precluded appellees' responsibility to pay that third-party judgment. We do not believe that section

---

[13] For instance, the settlement agreement stated that in "consideration for the payments described herein, the Releasing Parties hereby release . . . the Released Parties, SAVE AND EXCEPT THOSE CLAIMS AGAINST JOHN PAUL EMENHISER, from any and all claims . . . ." Another provision specifically excluded Emenhiser from the "Released Parties."

18

3.02 (as set forth above) could reasonably be interpreted differently, because it granted TASB RMF indemnity for all claims brought by or through appellant that arose out of Emenhiser's assaults. *See Webster*, 128 S.W.3d at 229. Further, TASB RMF's inclusion as an indemnified party but not a Released Party makes sense because at the time the parties signed the settlement agreement, TASB RMF had not yet been sued by appellant; appellant waited to sue TASB RMF until after she signed the settlement agreement and received money from TASB RMF.

Appellant also contends that the indemnity language in the settlement agreement cannot be interpreted to apply to claims in which "Sally Doe, a minor, had a direct (not derivative) claim" against Emenhiser. However, the language contains no limitation regarding either the direct or derivative nature of Sally's claims; rather, it applies to *all claims* brought by, through, or on behalf of appellant individually or as Sally's next friend.

For these reasons, we cannot agree with appellant that the trial court's summary judgment was improper on these bases.

**The indemnity agreement encompasses the assault claims against Emenhiser**

Appellant also asserts that the indemnity language in favor of TASB RMF does not cover the claims against Emenhiser because the language fails to

expressly mention personal injuries. In support of this contention, appellant relies on *Ard v. Gemini Exploration Co.*, 894 S.W.2d 11, 15 (Tex. App.—Houston [14th Dist.] 1994, writ denied). In *Ard*, the court examined indemnity language which stated in part,

> *Indemnity*. Contractor [RRS] agrees to indemnify and hold the Company [Resolve], including its affiliates, directors, officers, shareholders, employees, successors and assigns (collectively, the "Company Indemnified Parties"), harmless from all suits, actions, demands, damages, costs, expenses, or claims or any character, type or description, including the expenses of litigation, court costs, and reasonable attorney fees brought or made for or *on account of the employment relationship* between contractor and its employees, including, without limitation, all suits, actions, claims, demands, damages, costs, or expenses brought by contractor's employees under the applicable workers' compensation statute and other claims by its personnel for violation of civil rights, hiring practices and *other employment laws*.

*Id.* at 14 (emphasis added). The court held that the "failure to specifically list personal injury as a covered claim preclude[d] indemnity for the personal injury claim." *Id.* at 15.

However, the indemnity provision in this case is distinguishable from the one in *Ard*. In *Ard*, the provision limited itself to claims based on employment matters (as emphasized above). Section 3.02 of the settlement agreement contains no such limitation; rather, the indemnity provisions extend to "causes of action of whatsoever nature or character." Moreover, section 2.02 of the

20

settlement agreement states that the required payments of TASB RMF to appellant "constitute damages on account of personal physical injuries."

Further, by qualifying its relation to the "incident made the basis of this lawsuit," a phrase (apart from singular tense) defined in the terms of the settlement agreement to specifically mean the "assaults of [Sally]," section 3.02 directly connects to the sole legal theory—assault—to which appellant obtained her judgment against Emenhiser. Because of this, we conclude that whether section 3.02 more broadly provides indemnification for personal injuries other than those related to assault is irrelevant.

Therefore, the trial court also did not err by granting summary judgment on this ground.

**Appellant had authority to bind Sally to the indemnification agreement**

Finally, appellant asserts that even if she was bound to the indemnity provisions to the extent that appellees have asserted, Sally cannot be bound to the indemnity provisions because as a minor, Sally is legally disabled and was incompetent to enter the agreement. For this proposition, appellant cites rule of civil procedure 44 and *Vandewater v. American General Fire & Casualty Co.*, 890 S.W.2d 811, 814 (Tex. App.—Austin 1994), *rev'd*, 907 S.W.2d 491 (Tex. 1995). In reviewing the Austin Court of Appeals' decision in *Vandewater*, the

21

Texas Supreme Court considered "whether a trial court could properly acquire jurisdiction over a minor defendant and render a final judgment binding the minor's interests when the minor's mother answered as the minor's next friend." *Vandewater*, 907 S.W.2d at 491. The supreme court noted that the Austin court had focused on the plaintiff's failure "to personally serve [the minor] with process" and that the Austin court had therefore concluded that the "trial court never acquired personal jurisdiction" over him. *Id.* at 492. Rather than approving of such a narrow focus, the supreme court determined that an appellate court

> should evaluate whether the minor's interests have been properly protected and whether a deficiency in notice or due process has been shown to determine whether a trial court has obtained personal jurisdiction over a minor. In this case, the answer of [the mother] in her capacity as [the minor's] next friend was sufficient indication that [the minor's] legal representative knew about the proceedings and could therefore defend against them. No deficiencies in notice or due process are raised by the record on these facts.

*Id.* at 492–93 (citations omitted); *see Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 565 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (noting that a "parent has the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child" and that "a parent prosecuting in the dual capacity of next friend of a minor and as a plaintiff in her own right may settle a case, provided her interest is not preferred

22

to the detriment of the minor"); *see also* Tex. R. Civ. P. 44 (stating that minors may "sue and be represented by 'next friend'" and that the next friend may with "the approval of the court compromise suits and agree to judgments").

Like in *Vandewater*, we conclude that Sally's interests in entering the settlement agreement's indemnity provision and in defending against appellees' declaratory judgment counterclaim were properly protected because (1) Jane initiated the original suit against appellees on behalf of Sally, bringing Sally within the trial court's jurisdiction, (2) Jane signed the settlement agreement as Sally's next friend and filed responses to appellees' counterclaim and their motion for summary judgment[14] in that same capacity, (3) Sally's guardian ad litem also signed the settlement agreement on her behalf, and (4) appellant notified the trial court of the settlement, which the trial court specifically approved.[15]

Further, we note that appellant's position as to this issue is inconsistent with the benefit she obtained from the settlement agreement. In essence, she

---

[14] Appellant has cited no conflict between her and Sally in defending against appellees' summary judgment motion that would have required the trial court to appoint a guardian ad litem for that purpose.

[15] In approving the settlement, the trial court recited that Sally's guardian ad litem thoroughly considered the settlement and that he opined that its terms were fair and reasonable. The trial court found the settlement to be in Sally's best interest; it therefore ordered that it be "binding and conclusive in all respects."

23

contends that she had the authority to assert and settle claims on behalf of Sally and her while recovering large amounts of money by doing so, but that she did not have the authority to provide the consideration required to secure that benefit. Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken; it "forbids a party from accepting the benefits of a transaction . . . and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Brooks v. Brooks*, 257 S.W.3d 418, 423 (Tex. App.—Fort Worth 2008, pet. denied). Based on quasi-estoppel and the other authority cited above, we reject the assertion that Sally is not bound to the settlement agreement's indemnity provisions. Thus, summary judgment on appellees' counterclaim was also not precluded on this basis.

### The trial court properly granted summary judgment on appellees' indemnity counterclaim

For all of these reasons, we hold that appellees established that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law against appellant based on the indemnity provisions in the settlement agreement. Tex. R. Civ. P. 166a(c); *see Grant*, 73 S.W.3d at 215. We therefore affirm the trial court's order granting appellees' summary judgment motion on that ground.

24

**Our affirmance of the trial court's summary judgment on the basis of appellees' indemnification counterclaim is dispositive of this appeal**

Appellant's petition on file at the time the trial court granted appellees' motion for summary judgment against her sought a declaration that Emenhiser was an insured under appellees' coverage with DISD for the purpose of establishing that appellees were "obligated to satisfy any judgment" appellant obtained against Emenhiser. Because we hold that the indemnity and hold harmless language in the settlement agreement between appellant and DISD precludes appellees' responsibility to pay any such judgment to appellant, we conclude that as to her (and on Sally's behalf), the issue of whether Emenhiser is an insured under the interlocal participation agreement is immaterial.[16] In other words, though the indemnity provision is not an affirmative defense nor an absolute bar to appellant's claim seeking a coverage determination, *see Derr Construction Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App.—Houston [14th Dist.] 1992, no writ), we hold that in this case, it renders the coverage determination moot. Therefore, we will not consider whether the trial court properly granted appellees' summary judgment motions on the

---

[16] While it may remain material to Emenhiser (who must satisfy a $5,000,000 judgment), he did not appeal the trial court's decision to grant appellees' motion for summary judgment on their declaratory judgment cross-claim against him, nor did he file any response to the trial court regarding that motion.

25

coverage issue.  *See* Tex. R. App. P. 47.1; *Hawkins v. Walker*, 233 S.W.3d 380, 395 n. 47 (Tex. App.—Fort Worth 2007, no pet.).

## Conclusion

Having overruled a dispositive portion of appellant's sole issue, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE


PANEL:   LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  March 5, 2009