02-11-224-CV.REH









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00224-CV



 
 
 CabElTel International Corporation n/k/a New 
 Concept
 Energy, Inc.
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 Chesapeake Exploration, L.L.C. f/k/a Chesapeake
 Exploration Limited Partnership and Chesapeake Operating, Inc.
  
 
 
  
 
 
 APPELLEES 
 
 


----------

FROM THE 342nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

We
have considered appellant CabelTel International Corporation’s motion for
rehearing and appellees Chesapeake Exploration, L.L.C.’s and Chesapeake
Operating, Inc.’s (collectively, Chesapeake) motion for partial rehearing,
waiver of remanded claims, and request for affirmance of the trial court’s
judgment as modified.  We deny the motions but withdraw our May 17, 2012 opinion
and substitute the following.

Appellant
CabelTel appeals the trial court’s grant of summary judgment in favor of appellees
Chesapeake.  We affirm in part and reverse and remand in part.

Background
Facts

In
January 2006, Chesapeake Exploration entered into a Joint Operating Agreement (JOA)
with KEX Energy, LLC to explore an area in White County, Arkansas for oil and
gas.  The agreement named Chesapeake the “Operator” and KEX Energy the
“Non-Operator.”  The JOA stipulated that the parties were responsible for costs
and expenses proportionate to their interests in the drilling area and that the
nonoperator would pay the operator within fifteen days after receipt of the bill
from the operator for those costs.  Pursuant to the JOA, Chesapeake drilled and
completed two wells and KEX Energy began making payments for its share of the
costs.

KEX
Energy later assigned all of its rights, title, and interest in the contract
area to CabelTel, effective May 1, 2006.  In June 2006, Chesapeake stopped
receiving payments on the wells.  Chesapeake received a letter dated October
14, 2006, from CabelTel’s Managing Director acknowledging a past due amount
owed to Chesapeake and assuring that the matter would be addressed promptly. 
In December 2006, CabelTel had still not paid Chesapeake, so Chesapeake sent
CabelTel notice that legal action would be taken if payments were not received by
December 22, 2006.  CabelTel still did not make payment, and Chesapeake filed
suit against CabelTel, seeking in part to recover the outstanding balance of
$556,217.28 under the JOA.  Chesapeake filed for summary judgment on its breach
of contract claim against CabelTel, which the trial court granted for amounts
owed through December 2007.[2]  This appeal followed.

Standard
of Review

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A plaintiff is entitled
to summary judgment on a cause of action if it conclusively proves all
essential elements of the claim.  See Tex. R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).




Discussion

Presumption
of Receipt

In
its first issue, CabelTel argues that its payment obligation to Chesapeake was
never triggered because Chesapeake failed to prove as a matter of law that
CabelTel received the monthly Joint Interest Billing statements that the JOA
prescribed.  CabelTel does not deny that it received the billing statements but
instead argues that Chesapeake’s evidence does not provide enough specificity
of mailing to give rise to a rebuttable presumption of receipt.

Chesapeake’s
summary judgment evidence included the JOA, an affidavit of Chesapeake’s Vice
President and Division Controller of its Operations Accounting Department, Randy
Goben, and the deposition testimony of CabelTel’s expert, Jimmy Talley.  The
JOA set forth the billing guidelines between Chesapeake and CabelTel and stipulated
that Chesapeake “shall bill Non-Operators on or before the last day of each
month for their proportionate share of the Joint Account for the preceding
month.”  Goben’s affidavit includes testimony that Chesapeake issued monthly
billing statements to CabelTel.  Talley testified that CabelTel gave him the
Joint Interest Billing statements from 2006 through March 2007 in order for him
to prepare an accounting report.

CabelTel’s
having actually provided those billing statements to a third party is
sufficient to prove that CabelTel received the billing statements.  When there
is actual evidence of receipt as there is here, there is no need to analyze
whether Chesapeake met its burden under the presumption framework.  See Childers
v. Childers, No. 14-03-01266-CV, 2004 WL 3557381, at *1 n.3 (Tex.
App.—Houston [14th Dist.] Nov. 24, 2004, no pet.) (mem. op.) (noting that the
court “ha[d] no need” for a presumption of receipt because there was actual proof
of receipt).  Logically, CabelTel could not have provided the billing
statements to Talley if it had not received them, and CabelTel provided no
alternative explanation for how the statements came into its possession besides
Chesapeake’s assertion that it mailed them to CabelTel.  CabelTel’s payment
obligations to Chesapeake were therefore triggered for the bills for which Chesapeake
has direct evidence of receipt.  Because CabelTel did not offer any evidence to
contradict Chesapeake’s evidence, CabelTel failed to raise a fact issue as to whether
it received the June 2006 through March 2007 bills.

In
its motion for rehearing, CabelTel argues that even if the summary judgment
evidence establishes that it received the April 2007 through December 2007
bills, it does not establish when the bills were received.  The only
evidence of date of receipt is emails between Talley and Chesapeake dating from
April 2009 in which Talley requests supporting documentation for the bills in
his possession.  Because the JOA stipulated that CabelTel had twenty-four
months from receipt to make written exception to the bills, it argues that a
fact question exists that precludes summary judgment.  But when CabelTel
received the bills is irrelevant because, as explained below, Talley’s
testimony is that he never made a written exception and claim for adjustment
under the terms of the JOA.  We therefore overrule CabelTel’s first issue as to
the bills for June 2006 through March 2007.

Importantly,
CabelTel did not give Talley the Joint Interest Billing statements for any
month after March 2007.  Therefore, there is no direct evidence of receipt for or
possession of the billing statements from April 2007 through December 2007.  We
must therefore turn to the circumstantial evidence to see if it creates a
presumption of receipt for those bills.  A presumption of receipt arises when
there is proof that a letter was properly addressed, stamped, and mailed.  See
McMillin v. State Farm Lloyds, 180 S.W.3d 183, 206 (Tex. App.—Austin
2005, pet. denied).

Chesapeake
cites a number of cases in support of its argument that the JOA and Goben’s affidavit
stating that it issued monthly billing statements to CabelTel “in compliance
with the JOA” is sufficient to raise a presumption of receipt.  Each of the
cases Chesapeake cites bases that presumption on “circumstantial evidence, such
as the customary mailing routine.”  Cooper v. Hall, 489 S.W.2d 409,
412–13, 415 (Tex. Civ. App.—Amarillo 1972, writ ref’d n.r.e.) (noting the
presumption of receipt when the testimony was that the letter “was properly
addressed, stamped, and mailed to Defendant at his correct address and placed
in the United States mails and not returned to the Plaintiff’s attorney by the
postal authorities”); see also Adams v. John Hancock Mut. Life Ins. Co.,
No. 93-8504, 1995 WL 103340, at *3 (5th Cir. Feb. 27, 1995) (holding that
presumption arose from testimony that the application was “received by Armed
Forces, processed in accordance with its routine practice, placed in an
envelope as part of Armed Forces’ standard welcome package, and ultimately
mailed to . . . the address on the application”); Texaco,
Inc. v. Phan, 137 S.W.3d 763, 768 (Tex. App.—Houston [1st Dist.] 2004, no
pet.) (holding that the presumption arose when the testimony was that the court’s
computer automatically generated a default notice that was collected by the
mailing service vendor, who placed correct postage on the notice and mailed it
first class to the registered agent for service of process); Jimmy Swaggart
Ministries v. City of Arlington, 718 S.W.2d 83, 86 (Tex. App.—Fort Worth
1986, no writ) (holding that the presumption arose when the court clerk’s
testimony described the customary mailing procedure and showed that she
personally prepared the docket notices and properly addressed them).

In
this case, Chesapeake provided no evidence of its mailing procedures other than
the testimony that it complied with the JOA.  That Chesapeake issued monthly
billing statements says nothing about whether those statements were properly
addressed to CabelTel, whether they had sufficient postage, or whether they
were properly mailed through the postal service.  See Tex. Emp. Ins. Ass’n
v. Wermske, 162 Tex. 540, 349 S.W.2d 90, 92 (Tex. 1961) (holding that no
presumption of receipt arose from testimony that a letter was left on a desk to
be mailed but had not been placed in a properly addressed and stamped envelope when
there were no “corroborating circumstances to support the inference that the
[office mailing] custom [was] carried out”).

Chesapeake’s
summary judgment evidence for the April to December bills is insufficient to
create a presumption of receipt.  See Sellers v. Foster, 199 S.W.3d 385,
395 (Tex. App.—Fort Worth 2006, no pet.) (holding that no presumption of
receipt arose when appellee presented no evidence regarding procedures for
mailing notices).  Because Chesapeake’s evidence failed to create a presumption
of receipt as to those bills, it did not conclusively prove that CabelTel’s
payment obligations for the April through December 2007 bills were triggered. 
Summary judgment was therefore improper as to those bills.  See MMP,
Ltd., 710 S.W.2d at 60 (“To be entitled to summary judgment, the movant
must conclusively prove all essential elements of his claim.”).  We sustain CabelTel’s
first issue as to the April 2007 through December 2007 bills.

Because
we hold that summary judgment was improper on the issue of receipt as to the
April 2007 through December 2007 bills, we do not need to address the remainder
of CabelTel’s issues for those bills.  See Tex. R. App. P. 47.1.  Because
we overruled CabelTel’s first issue as to the remainder of the bills, we
address the rest of CabelTel’s issues as to those bills below.

Timely
written exception to the billing statements

In
its second issue, CabelTel asserts that summary judgment was improper because a
fact issue existed as to whether CabelTel made timely written exceptions to the
billing statements, affecting the presumption of the billing statements’
accuracy.  The JOA stipulates that

all bills and
statements rendered to Non-Operators by Operator during any calendar year shall
conclusively be presumed to be true and correct after twenty-four (24) months
following the end of any such calendar year, unless within the said twenty-four
(24) month period a Non-Operator takes written exception thereto and makes claim
on Operator for adjustments.

 

In
its brief, CabelTel argues that Talley made exceptions to the billing
statements by email, affidavit, written report, and errata beginning April 20,
2009 and that his exceptions were sufficient under the JOA.  Talley stated in
an affidavit dated June 9, 2010, that the Council of Petroleum Accountants
Societies, Inc.’s (COPAS) “mandatory guidelines”—and specifically guideline
AG-19—applied to the JOA.[3]  AG-19 defines “exception”
as “a written audit finding presented to the Operator prior to or with the
Audit Report, which includes all appropriate and available supporting detail,
such as voucher references, source documents, and explanatory worksheets.”  In
his deposition, Talley also testified that the language in the above-quoted
section of the JOA is standard industry language and that he knew what the
contract required for a written exception and claim for adjustment.

Twice
during his deposition, Talley testified that he never made a written exception
and claim for adjustment as required by the JOA to prevent the bills from being
deemed presumptively true.[4]  Because the record shows
that Talley did not make any written exceptions or claims for adjustment, there
was no fact issue raised by CabelTel as to whether it made a timely written
exception.

In
its motion for rehearing, CabelTel cites Paint Rock Operating, LLC v.
Chisholm Exploration, Inc., 339 S.W.3d 771 (Tex. App.—Eastland 2011, no
pet.), as authority for its contention that the AG-19 definition of exception
does not apply to the JOA.  In Paint Rock, the nonoperator (Chisholm) returned
marked-up copies of the monthly billing statements to the operator “showing the
charges that it refused to pay, along with a check for the undisputed
charges.”  Id. at 773. The trial court held, and the court of appeals
affirmed, that Chisholm’s markings on the returned billing statements
constituted a sufficient written exception.  Id. at 776.

However,
in Paint Rock, the operator did not dispute that Chisholm made some sort
of written exception; it argued only that the JOA required Chisholm to also
provide an explanation for the objection.  Id.  The court of appeals
expressly stated,

We do not hold that
marking out charges on a JIB and returning it to the operator is sufficient, as
a matter of law, to comply with COPAS Article I.4.  Our holding is limited to a
review of the sufficiency of the evidence to support the trial court’s finding
of fact in this case.

 

Id. at
777 n.4.  Thus, Paint Rock did not address the question that is before
us now:[5] whether emails and a nonaudit
report constitute a written exception and claim for adjustment under the terms
of the JOA governed by COPAS guidelines.   Talley’s testimony was that COPAS,
and specifically AG-19, governed the contract, and that he did not make a
written exception or claim for adjustment as those terms were used in the
contract.  We therefore overrule CabelTel’s second issue.

Right
to Audit

In
its third issue, CabelTel argues that summary judgment was improper because a
genuine issue of fact existed as to whether Chesapeake performed its duties
under the JOA with respect to CabelTel’s rights to audit.  CabelTel asserts
that Chesapeake “thwarted” Talley’s audit attempt.  CabelTel does not assert
that it attempted an audit except through Talley.  However, Talley testified
that he never conducted an audit, and a report from Talley to CabelTel’s
President, Gene Bertcher, clearly states:  “We were not engaged to, and did
not, conduct an audit . . . .”  Since CabelTel never attempted an audit, it
cannot argue that a fact issue existed as to whether Chesapeake refused to
allow an audit.  We therefore overrule CabelTel’s third issue.

Accurate
Billing

In
its fourth issue, CabelTel asserts that a fact issue existed as to whether it
incurred the costs reflected in Chesapeake’s invoices.  As addressed in the
second issue, the JOA stipulates that Chesapeake’s billing “shall conclusively
be presumed to be true and correct” unless timely written exceptions and claims
for adjustment are made.  Because the evidence establishes that CabelTel never
furnished timely written exceptions or claims for adjustment, Chesapeake’s
invoices are presumed to be true and correct.  See Winchek v. Am. Exp.
Travel Related Servs. Co., 232 S.W.3d 197, 205 (Tex. App.—Houston [1st
Dist.] 2007, no pet.) (op. on reh’g) (holding that creditor established the
amount of damages suffered by debtor when creditor’s affiant testified that it
sent monthly statements of all debits and credits, that all payments and
offsets had been applied to the account, and that debtor failed to pay the
balance due).  We therefore overrule CabelTel’s fourth issue.

Conclusion

Having
overruled each of CabelTel’s issues as to the June 2006 through March 2007
bills, we affirm the trial court’s grant of summary judgment in favor of
Chesapeake as to those bills.[6]  Having sustained
CabelTel’s first issue as to the April 2007 through December 2007 bills, we
reverse the trial court’s summary judgment as to those bills and remand the
case for further proceedings consistent with this opinion.[7]

 

LEE GABRIEL
JUSTICE

 

PANEL: 
GARDNER,
MEIER, and GABRIEL, JJ.

 

DELIVERED:  July 12, 2012









[1]See Tex. R. App. P. 47.4.





[2]Chesapeake did not move
for summary judgment on its suit on account claim.  The parties reached a
settlement as to the rest of the disputed amount owed.





[3]CabelTel argues on appeal
that it never agreed to be governed by AG-19.  Each page of the Accounting
Procedure section in the Joint Operating Agreement bears a stamp that says
“COPAS 1984 ONSHORE Recommended by the Council of Petroleum Accountants
Societies” and a second stamp that simply says “COPAS.”  The first page of the
Accounting Procedure section also bears a copyright claim by COPAS.  CabelTel’s
own expert testified that AG-19 applies to COPAS accounting procedure
agreements.  We therefore decline to find any genuine dispute as to whether the
definitions found in AG-19 apply to the JOA.  See Doe v. Tex. Ass’n
of Sch. Bds., Inc., 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet.
denied) (noting that words in a contract are given their ordinary, generally
accepted meanings “unless the contract itself shows that the terms have been
used in a technical or different sense”) (emphasis added).





[4]Talley was asked,

Q.  As [the term “written exception”] is utilized in
this [JOA], did you, on behalf of your client, ever make a written exception to
Chesapeake and make a claim to Chesapeake for an adjustment?

A.  Not on the—didn’t make any claims. 
And I did not give them any exceptions on that I finalized, but I did point out
exceptions in the emails and asked for documents and help that they did not do.

Later he was asked,

          Q.  Now, as far as your work in this matter,
did you ever make a written exception and a claim for adjustment to Chesapeake,
as that term is contemplated under paragraph four or five of the JOA?

          A.  Not pertaining to this document, no, sir.

          Q.  And when you say not pertaining to this
document, you're saying that you never made a written exception and a claim to
Chesapeake as contemplated in Paragraph 4 and 5 of [the JOA]?

          A.  No, sir.





[5]Whether COPAS governed the
agreement at issue in Paint Rock does not appear to have been raised in
that case at trial or on appeal as it was in this case.  Neither, as the cited
footnote states, did Paint Rock address what was sufficient as a written
exception under the AG-19 guideline.





[6]Chesapeake’s summary
judgment evidence establishes the amount owed by CabelTel for those months is
$540,069.81.





[7]On rehearing, Chesapeake
states that it “waives and relinquishes its claim to” the remaining disputed
bills.  It requests that we modify our opinion to render judgment only in the
amount established by the summary judgment evidence.  Chesapeake does not cite
to any authority demonstrating our right to do what it requests.  We therefore
deny Chesapeake’s request.