

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-11-00224-CV

CABELTEL INTERNATIONAL                                          APPELLANT
CORPORATION N/K/A NEW
CONCEPT ENERGY, INC.

V.

CHESAPEAKE EXPLORATION, L.L.C.                                  APPELLEES
F/K/A CHESAPEAKE EXPLORATION
LIMITED PARTNERSHIP AND
CHESAPEAKE OPERATING, INC.

----------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

We have considered appellant CabelTel International Corporation's motion

for rehearing and appellees Chesapeake Exploration, L.L.C.'s and Chesapeake

Operating, Inc.'s (collectively, Chesapeake) motion for partial rehearing, waiver

of remanded claims, and request for affirmance of the trial court's judgment as

---

[1]*See* Tex. R. App. P. 47.4.

modified. We deny the motions but withdraw our May 17, 2012 opinion and substitute the following.

Appellant CabelTel appeals the trial court's grant of summary judgment in favor of appellees Chesapeake. We affirm in part and reverse and remand in part.

**Background Facts**

In January 2006, Chesapeake Exploration entered into a Joint Operating Agreement (JOA) with KEX Energy, LLC to explore an area in White County, Arkansas for oil and gas. The agreement named Chesapeake the "Operator" and KEX Energy the "Non-Operator." The JOA stipulated that the parties were responsible for costs and expenses proportionate to their interests in the drilling area and that the nonoperator would pay the operator within fifteen days after receipt of the bill from the operator for those costs. Pursuant to the JOA, Chesapeake drilled and completed two wells and KEX Energy began making payments for its share of the costs.

KEX Energy later assigned all of its rights, title, and interest in the contract area to CabelTel, effective May 1, 2006. In June 2006, Chesapeake stopped receiving payments on the wells. Chesapeake received a letter dated October 14, 2006, from CabelTel's Managing Director acknowledging a past due amount owed to Chesapeake and assuring that the matter would be addressed promptly. In December 2006, CabelTel had still not paid Chesapeake, so Chesapeake sent CabelTel notice that legal action would be taken if payments were not received

2

by December 22, 2006. CabelTel still did not make payment, and Chesapeake filed suit against CabelTel, seeking in part to recover the outstanding balance of $556,217.28 under the JOA. Chesapeake filed for summary judgment on its breach of contract claim against CabelTel, which the trial court granted for amounts owed through December 2007.[2] This appeal followed.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

---

[2]Chesapeake did not move for summary judgment on its suit on account claim. The parties reached a settlement as to the rest of the disputed amount owed.

## Discussion

### Presumption of Receipt

In its first issue, CabelTel argues that its payment obligation to Chesapeake was never triggered because Chesapeake failed to prove as a matter of law that CabelTel received the monthly Joint Interest Billing statements that the JOA prescribed. CabelTel does not deny that it received the billing statements but instead argues that Chesapeake's evidence does not provide enough specificity of mailing to give rise to a rebuttable presumption of receipt.

Chesapeake's summary judgment evidence included the JOA, an affidavit of Chesapeake's Vice President and Division Controller of its Operations Accounting Department, Randy Goben, and the deposition testimony of CabelTel's expert, Jimmy Talley. The JOA set forth the billing guidelines between Chesapeake and CabelTel and stipulated that Chesapeake "shall bill Non-Operators on or before the last day of each month for their proportionate share of the Joint Account for the preceding month." Goben's affidavit includes testimony that Chesapeake issued monthly billing statements to CabelTel. Talley testified that CabelTel gave him the Joint Interest Billing statements from 2006 through March 2007 in order for him to prepare an accounting report.

CabelTel's having actually provided those billing statements to a third party is sufficient to prove that CabelTel received the billing statements. When there is actual evidence of receipt as there is here, there is no need to analyze whether Chesapeake met its burden under the presumption framework. *See Childers v.*

4

*Childers*, No. 14-03-01266-CV, 2004 WL 3557381, at *1 n.3 (Tex. App.—Houston [14th Dist.] Nov. 24, 2004, no pet.) (mem. op.) (noting that the court "ha[d] no need" for a presumption of receipt because there was actual proof of receipt). Logically, CabelTel could not have provided the billing statements to Talley if it had not received them, and CabelTel provided no alternative explanation for how the statements came into its possession besides Chesapeake's assertion that it mailed them to CabelTel. CabelTel's payment obligations to Chesapeake were therefore triggered for the bills for which Chesapeake has direct evidence of receipt. Because CabelTel did not offer any evidence to contradict Chesapeake's evidence, CabelTel failed to raise a fact issue as to whether it received the June 2006 through March 2007 bills.

In its motion for rehearing, CabelTel argues that even if the summary judgment evidence establishes that it received the April 2007 through December 2007 bills, it does not establish *when* the bills were received. The only evidence of date of receipt is emails between Talley and Chesapeake dating from April 2009 in which Talley requests supporting documentation for the bills in his possession. Because the JOA stipulated that CabelTel had twenty-four months from receipt to make written exception to the bills, it argues that a fact question exists that precludes summary judgment. But when CabelTel received the bills is irrelevant because, as explained below, Talley's testimony is that he never made a written exception and claim for adjustment under the terms of the JOA. We

5

therefore overrule CabelTel's first issue as to the bills for June 2006 through March 2007.

Importantly, CabelTel did not give Talley the Joint Interest Billing statements for any month after March 2007. Therefore, there is no direct evidence of receipt for or possession of the billing statements from April 2007 through December 2007. We must therefore turn to the circumstantial evidence to see if it creates a presumption of receipt for those bills. A presumption of receipt arises when there is proof that a letter was properly addressed, stamped, and mailed. *See McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 206 (Tex. App.—Austin 2005, pet. denied).

Chesapeake cites a number of cases in support of its argument that the JOA and Goben's affidavit stating that it issued monthly billing statements to CabelTel "in compliance with the JOA" is sufficient to raise a presumption of receipt. Each of the cases Chesapeake cites bases that presumption on "circumstantial evidence, such as the customary mailing routine." *Cooper v. Hall*, 489 S.W.2d 409, 412–13, 415 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.) (noting the presumption of receipt when the testimony was that the letter "was properly addressed, stamped, and mailed to Defendant at his correct address and placed in the United States mails and not returned to the Plaintiff's attorney by the postal authorities"); *see also Adams v. John Hancock Mut. Life Ins. Co.*, No. 93-8504, 1995 WL 103340, at *3 (5th Cir. Feb. 27, 1995) (holding that presumption arose from testimony that the application was "received by Armed

6

Forces, processed in accordance with its routine practice, placed in an envelope as part of Armed Forces' standard welcome package, and ultimately mailed to . . . the address on the application"); *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 768 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that the presumption arose when the testimony was that the court's computer automatically generated a default notice that was collected by the mailing service vendor, who placed correct postage on the notice and mailed it first class to the registered agent for service of process); *Jimmy Swaggart Ministries v. City of Arlington*, 718 S.W.2d 83, 86 (Tex. App.—Fort Worth 1986, no writ) (holding that the presumption arose when the court clerk's testimony described the customary mailing procedure and showed that she personally prepared the docket notices and properly addressed them).

In this case, Chesapeake provided no evidence of its mailing procedures other than the testimony that it complied with the JOA. That Chesapeake issued monthly billing statements says nothing about whether those statements were properly addressed to CabelTel, whether they had sufficient postage, or whether they were properly mailed through the postal service. *See Tex. Emp. Ins. Ass'n v. Wermske*, 162 Tex. 540, 349 S.W.2d 90, 92 (Tex. 1961) (holding that no presumption of receipt arose from testimony that a letter was left on a desk to be mailed but had not been placed in a properly addressed and stamped envelope when there were no "corroborating circumstances to support the inference that the [office mailing] custom [was] carried out").

Chesapeake's summary judgment evidence for the April to December bills is insufficient to create a presumption of receipt. *See Sellers v. Foster*, 199 S.W.3d 385, 395 (Tex. App.—Fort Worth 2006, no pet.) (holding that no presumption of receipt arose when appellee presented no evidence regarding procedures for mailing notices). Because Chesapeake's evidence failed to create a presumption of receipt as to those bills, it did not conclusively prove that CabelTel's payment obligations for the April through December 2007 bills were triggered. Summary judgment was therefore improper as to those bills. *See MMP, Ltd.*, 710 S.W.2d at 60 ("To be entitled to summary judgment, the movant must conclusively prove all essential elements of his claim."). We sustain CabelTel's first issue as to the April 2007 through December 2007 bills.

Because we hold that summary judgment was improper on the issue of receipt as to the April 2007 through December 2007 bills, we do not need to address the remainder of CabelTel's issues for those bills. *See* Tex. R. App. P. 47.1. Because we overruled CabelTel's first issue as to the remainder of the bills, we address the rest of CabelTel's issues as to those bills below.

**Timely written exception to the billing statements**

In its second issue, CabelTel asserts that summary judgment was improper because a fact issue existed as to whether CabelTel made timely written exceptions to the billing statements, affecting the presumption of the billing statements' accuracy. The JOA stipulates that

all bills and statements rendered to Non-Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non-Operator takes written exception thereto and makes claim on Operator for adjustments.

In its brief, CabelTel argues that Talley made exceptions to the billing statements by email, affidavit, written report, and errata beginning April 20, 2009 and that his exceptions were sufficient under the JOA. Talley stated in an affidavit dated June 9, 2010, that the Council of Petroleum Accountants Societies, Inc.'s (COPAS) "mandatory guidelines"—and specifically guideline AG-19—applied to the JOA.[3] AG-19 defines "exception" as "a written audit finding presented to the Operator prior to or with the Audit Report, which includes all appropriate and available supporting detail, such as voucher references, source documents, and explanatory worksheets." In his deposition, Talley also testified that the language in the above-quoted section of the JOA is standard industry

---

[3]CabelTel argues on appeal that it never agreed to be governed by AG-19. Each page of the Accounting Procedure section in the Joint Operating Agreement bears a stamp that says "COPAS 1984 ONSHORE Recommended by the Council of Petroleum Accountants Societies" and a second stamp that simply says "COPAS." The first page of the Accounting Procedure section also bears a copyright claim by COPAS. CabelTel's own expert testified that AG-19 applies to COPAS accounting procedure agreements. We therefore decline to find any genuine dispute as to whether the definitions found in AG-19 apply to the JOA. *See Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied) (noting that words in a contract are given their ordinary, generally accepted meanings "*unless the contract itself shows that the terms have been used in a technical or different sense*") (emphasis added).

9

language and that he knew what the contract required for a written exception and claim for adjustment.

Twice during his deposition, Talley testified that he never made a written exception and claim for adjustment as required by the JOA to prevent the bills from being deemed presumptively true.[4] Because the record shows that Talley did not make any written exceptions or claims for adjustment, there was no fact issue raised by CabelTel as to whether it made a timely written exception.

In its motion for rehearing, CabelTel cites *Paint Rock Operating, LLC v. Chisholm Exploration, Inc.*, 339 S.W.3d 771 (Tex. App.—Eastland 2011, no pet.),

---

[4]Talley was asked,

> Q. As [the term "written exception"] is utilized in this [JOA], did you, on behalf of your client, ever make a written exception to Chesapeake and make a claim to Chesapeake for an adjustment?
>
> A. Not on the—didn't make any claims. And I did not give them any exceptions on that I finalized, but I did point out exceptions in the emails and asked for documents and help that they did not do.

Later he was asked,

> Q. Now, as far as your work in this matter, did you ever make a written exception and a claim for adjustment to Chesapeake, as that term is contemplated under paragraph four or five of the JOA?
>
> A. Not pertaining to this document, no, sir.
>
> Q. And when you say not pertaining to this document, you're saying that you never made a written exception and a claim to Chesapeake as contemplated in Paragraph 4 and 5 of [the JOA]?
>
> A. No, sir.

10

as authority for its contention that the AG-19 definition of exception does not apply to the JOA. In *Paint Rock*, the nonoperator (Chisholm) returned marked-up copies of the monthly billing statements to the operator "showing the charges that it refused to pay, along with a check for the undisputed charges." *Id*. at 773. The trial court held, and the court of appeals affirmed, that Chisholm's markings on the returned billing statements constituted a sufficient written exception. *Id*. at 776.

However, in *Paint Rock*, the operator did not dispute that Chisholm made some sort of written exception; it argued only that the JOA required Chisholm to also provide an explanation for the objection. *Id*. The court of appeals expressly stated,

> We do not hold that marking out charges on a JIB and returning it to the operator is sufficient, as a matter of law, to comply with COPAS Article I.4. Our holding is limited to a review of the sufficiency of the evidence to support the trial court's finding of fact in this case.

*Id*. at 777 n.4. Thus, *Paint Rock* did not address the question that is before us now:[5] whether emails and a nonaudit report constitute a written exception and claim for adjustment under the terms of the JOA governed by COPAS guidelines. Talley's testimony was that COPAS, and specifically AG-19, governed the contract, and that he did not make a written exception or claim for adjustment as

_____

[5]Whether COPAS governed the agreement at issue in *Paint Rock* does not appear to have been raised in that case at trial or on appeal as it was in this case. Neither, as the cited footnote states, did *Paint Rock* address what was sufficient as a written exception under the AG-19 guideline.

11

those terms were used in the contract. We therefore overrule CabelTel's second issue.

**Right to Audit**

In its third issue, CabelTel argues that summary judgment was improper because a genuine issue of fact existed as to whether Chesapeake performed its duties under the JOA with respect to CabelTel's rights to audit. CabelTel asserts that Chesapeake "thwarted" Talley's audit attempt. CabelTel does not assert that it attempted an audit except through Talley. However, Talley testified that he never conducted an audit, and a report from Talley to CabelTel's President, Gene Bertcher, clearly states: "We were not engaged to, and did not, conduct an audit . . . ." Since CabelTel never attempted an audit, it cannot argue that a fact issue existed as to whether Chesapeake refused to allow an audit. We therefore overrule CabelTel's third issue.

**Accurate Billing**

In its fourth issue, CabelTel asserts that a fact issue existed as to whether it incurred the costs reflected in Chesapeake's invoices. As addressed in the second issue, the JOA stipulates that Chesapeake's billing "shall conclusively be presumed to be true and correct" unless timely written exceptions and claims for adjustment are made. Because the evidence establishes that CabelTel never furnished timely written exceptions or claims for adjustment, Chesapeake's invoices are presumed to be true and correct. *See Winchek v. Am. Exp. Travel Related Servs. Co.,* 232 S.W.3d 197, 205 (Tex. App.—Houston [1st Dist.] 2007,

12

no pet.) (op. on reh'g) (holding that creditor established the amount of damages suffered by debtor when creditor's affiant testified that it sent monthly statements of all debits and credits, that all payments and offsets had been applied to the account, and that debtor failed to pay the balance due). We therefore overrule CabelTel's fourth issue.

## Conclusion

Having overruled each of CabelTel's issues as to the June 2006 through March 2007 bills, we affirm the trial court's grant of summary judgment in favor of Chesapeake as to those bills.[6] Having sustained CabelTel's first issue as to the April 2007 through December 2007 bills, we reverse the trial court's summary judgment as to those bills and remand the case for further proceedings consistent with this opinion.[7]

LEE GABRIEL
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

DELIVERED: July 12, 2012

---

[6]Chesapeake's summary judgment evidence establishes the amount owed by CabelTel for those months is $540,069.81.

[7]On rehearing, Chesapeake states that it "waives and relinquishes its claim to" the remaining disputed bills. It requests that we modify our opinion to render judgment only in the amount established by the summary judgment evidence. Chesapeake does not cite to any authority demonstrating our right to do what it requests. We therefore deny Chesapeake's request.