**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00039-CV

———————————

**MMR CONSTRUCTORS, INC., Appellant**

**V.**

**THE DOW CHEMICAL COMPANY, Appellee**

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 97962-CV**

---

## MEMORANDUM OPINION

MMR Constructors, Inc. sued The Dow Chemical Company for breach of contact, quantum meruit, and statutory prompt payment violations related to construction services that MMR provided to Dow on a project. MMR claims that Dow owes it an additional $17 million above the agreed fixed-contract price of $40

million because MMR incurred increased costs when it was directed by Dow to accelerate its work after Dow's other contractors caused the work schedule to be delayed.

The trial court granted Dow's traditional motion for summary judgment, which MMR now appeals. Based on the record, we hold that Dow proved, as a matter of law, that (1) MMR released its breach-of-contract claim; (2) the express contract between the parties precludes MMR's quantum meruit claim; and (3) MMR's statutory prompt pay claim fails without a valid contract claim. Accordingly, we affirm the trial court's summary judgment.

## Background

On February 4, 2016, Dow and MMR entered into a contract ("the Contract") for MMR to provide electrical and instrumentation construction work on Dow's Power, Utilities, and Infrastructure Project in Freeport, Texas. The Contract specified that MMR would begin its work on March 1, 2016 and complete it by March 3, 2017. The work to be provided by MMR was specified in the Contract. Dow agreed to pay MMR the fixed price of $40,407,604 for the work. MMR achieved mechanical completion of its work on March 10, 2017.

The Contract contemplated that it could be modified if the scope or timing of MMR's work changed during the project. The Contract also contemplated that it could be modified to provide MMR with additional compensation if changes

2

affecting its work caused MMR to incur extra costs above the agreed fixed-contract price. Parts III and IV of the Contract included provisions addressing when MMR was entitled to additional compensation and set out the process by which MMR could obtain additional compensation.

Part III of the Contract contained "General Terms," and Part IV of the Contract contained "Special Terms." The Contract stated that Part IV–Special Terms "set[s] forth herein modifications to specific Terms and Conditions that are contained in Part III–General Terms. Such modifications take precedence over Part III–General Terms." The modifications made in the "Special Terms" are italicized in the Contract to denote the modifications. The Contract provisions cited by the parties relevant to issues in this case are as follows:

## TIMING OF WORK

10.0 SCHEDULING, REPORTING AND COORDINATION

. . . .

> 10.2 During the performance of Work, Contractor [MMR] shall submit to Company [Dow] periodic progress reports on the actual progress and updated schedules as may be required by this Contract or requested by Company. In the event Contractor's performance of the Work is not in compliance with the schedule established for such performance, Company may, in writing, require the Contractor to submit its plan for schedule recovery, or specify in writing the steps to be taken to achieve compliance with such schedule, and/or exercise any other remedies under this Contract. Contractor shall thereupon take such steps as may be directed by Company or otherwise necessary to improve its progress without additional cost to Company or Owner.

*Notwithstanding the sentence above, if Contractor's performance of Work is delayed by Company, Owner, or other contractors, vendors or suppliers for which Company is responsible, then Contractor shall be compensated for such steps directed by Company to recover the schedule.*

. . . .

## WORK CHANGES

**15.0 CHANGES**

15.1 The Scope of Work shall be subject to change by additions, deletions or revisions thereto by Company. Contractor will be notified of such changes by receipt of additional and/or revised drawings, specifications, exhibits or other written notification.

15.2 If, upon receipt of any notification, Contractor considers that a change is involved that could affect its costs of performing the Work or upon the schedule for performance of the Work, Contractor is obligated to inform Company within five (5) working days of Contractor receiving the notification. Unless Contractor notifies Company in accordance with this Section, Contractor is obliged to perform the Work in accordance with the change and will have no entitlement to any additional compensation or to any change to the schedule.

15.3 Contractor shall submit to Company within ten (10) working days after submission of the notification from Contractor required under Section 15.2, above, a detailed takeoff with supporting calculations and pricing for the change, together with any requested adjustments in the schedule. The pricing shall be itemized as required by Company and shall be in sufficient detail to permit an analysis of all labor, material and equipment and shall cover all work involved in the change, whether such work was deleted, added or modified. Amounts related to subcontracts shall be supported in similar detail. Any

4

adjustments to the schedule must be accompanied by a revised version of the detailed schedule, agreed in accordance with Section 10.1 demonstrating that any proposed changes to the schedule have been caused by the change and have affected a critical path on such previously agreed detailed schedule.

15.4 If Contractor does not provide the detailed take-off to Company, within the time allowed by Section 15.3, Contractor will have waived any right to additional compensation or to a change to the schedule, in respect of the change and will proceed with the work in accordance with the change notification issued pursuant to Section 15.1, above.

15.5 Contractor shall not perform changes in the Work in accordance with Section 15.1 until Company and Owner have approved in writing the pricing for the change and any adjustment in the schedule for performance of the Work, except as set forth in Sections 15.4 and 15.6. Upon receiving such written approval from Company and Owner, Contractor shall diligently perform the change in strict accordance with this Contract.

15.6 Notwithstanding Section 15.5 Company may expressly authorize Contractor in writing to perform the change prior to such approval by Company and Owner. Contractor shall not suspend performance of this Contract during the review and negotiation of any change, except as may be directed by Company pursuant to Article 16.0, Suspension of Work. In the event Company, Owner and Contractor are unable to reach timely agreement regarding any change, Contractor shall then comply with Article 18.0, Claims.

. . . .

## 18.0  CLAIMS

18.1 If, for any reason, Contractor considers that an event has occurred pursuant to which it has a right to claim compensation from Owner or an extension to the schedule, Contractor shall notify Owner in writing of the existence of such claim within five (5) working days of the Parties' failure to reach a timely agreement pursuant to Section 15.6 for changes or from *Contractor learning of* the occurrence of the event in question for other claims. Within ten (10) days of giving such a notification, *or at a mutually agreed reasonable time*, Contractor shall submit to Company the proposed cost and schedule effect of the change. In this respect, Contractor shall comply with the provisions of Section 15.3. Contractor shall substantiate its claim with payroll documents, paid invoices, receipts, records of performance and other documents satisfactory to Owner and subject to its verification. Neither Company nor Owner shall be liable for, and Contractor hereby waives, any claim or potential claim of Contractor which was not reported by Contractor in accordance with the provisions of this Article, regardless of the cause including the negligence of Company and Owner.

18.2 Owner will determine the extent, if any, to which the Contract Price is to be changed by reason of the claim and the extent to which the schedule is to be changed by reason of the claim. Owner will advise Contractor of the result of this determination and will issue a Contract modification accordingly. If Contractor disputes Owner's determination and notifies Owner within five (5) working days of receiving it, Contractor may seek to resolve the dispute in accordance with Article 50.0 [agreeing to bench trial]. . . .

The Contract also contained the following provisions regarding the documentation of modifications to the Contract:

8.0   CONTRACT MODIFICATIONS

The Contract Modification is the only document by which the Contract may be changed or supplemented. It is therefore the

only authority for payment of changes, and changes may not be invoiced until the appropriate modification has been executed and issued.

8.1    Company will prepare all Contract Modifications.

8.2    Changes covered by a modification may include:

- Added or deleted Work
- Revised drawings or specifications
- Modified conditions for performance of [W]ork or unforeseen field conditions
- Authorization of overtime
- Revised requirements for Company or Contractor furnished materials, equipment or services.
- Schedule revisions
- Alteration or removal of completed Work

8.3    Both    Company    and    Contractor's    authorized representatives shall execute all Contract Modifications.

Between April 2016 and May 2017, the parties executed twelve Contract Modifications, providing MMR with additional compensation over the fixed-contact price. The additional compensation to MMR totaled over $2.75 million. Each contract modification contained the following release:

THIS CONTRACT MODIFICATION REPRESENTS FINAL ADJUSTMENT FOR ANY AND ALL AMOUNTS DUE OR TO BECOME DUE TO CONTRACTOR FOR CHANGES REFERRED TO HEREIN. CONTRACTOR FURTHER RELEASES ALL OTHER CLAIMS, IF ANY (EXCEPT THOSE CLAIMS PREVIOUSLY SUBMITTED IN WRITING IN STRICT ACCORDANCE WITH THE CONTRACT), FOR ADDITIONAL COMPENSATION UNDER THIS CONTRACT, INCLUDING WITHOUT LIMITATION ANY RIGHTS CONTRACTOR MAY HAVE FOR ADDITIONAL COMPENSATION ARISING OUT OF DELAYS OR DISRUPTION OF CONTRACTOR'S SCHEDULE AS MAY HAVE

ARISEN PRIOR TO THE DATE OF THIS CONTRACT MODIFICATION. UNLESS OTHERWISE EXPRESSLY PROVIDED HEREIN, THE TIME OF COMPLETION AND ALL OTHER TERMS AND CONDITIONS OF THE CONTRACT REMAIN UNCHANGED.

The last of these Contract Modifications was signed on May 3, 2017, nearly two months after MMR achieved mechanical completion of its work.

On May 27, 2017, MMR submitted a "Change Order Request" to Dow, stating, "[p]ursuant to Article 15.0, Part III–General Terms of the above referenced contract, MMR submits this notification of change due to changing site conditions." Based on the alleged change, MMR sought an additional $17.8 million from Dow. On June 9, 2017, MMR amended the request, reducing the additional compensation it sought from Dow to $16.9 million. On June 20, 2017, MMR sent correspondence to Dow asserting that Article 15 was not applicable to its request for additional compensation but that it had "merely submitted its request in Change Order form out of an abundance of caution that it would later be determined that MMR should have done so." MMR also informed Dow that its request for additional compensation included "damages due to others' failure to properly supervise and/or schedule the project, failure of other contractors for which MMR was not responsible to complete the predecessor work in a reasonable and/or timely fashion, stacking of trades, owner furnished material not available in a timely manner, negligence, etc."

On July 30, 2018, MMR filed suit against Dow, pleading claims for breach of contract, quantum meruit, and violation of the Prompt Payment to Contractors Act.[1] In its petition, MMR asserted that "[the] dispute arises from MMR's request for additional compensation under the Contract and Dow's refusal to modify the Contract or to pay the additional compensation requested."

In support of its claims, MMR alleged that it had incurred increased costs above the fixed-contract price because other contractors under Dow's control had been late in completing their work on the project. Because the scope of the other contractors' work involved "necessary predecessor activities for MMR to complete its own work," the delay in the other contractors' completion of their work "negatively impacted MMR's own project schedule." MMR alleged that Dow "insisted that MMR increase its workforce to 'recover' or 'accelerate' the schedule" caused by the work delays of the other contractors. MMR claimed that "Dow's insistence that MMR manage the Project in a certain manner by directing MMR to accelerate its performance caused MMR to incur massive additional expenses." Specifically, MMR alleged that, at Dow's direction, MMR incurred "acceleration costs" above the fixed-contract price because it had to increase labor from 614,636 man-hours to 954,858 man-hours in order to recover the schedule that had been delayed by Dow's other contractors.

---

[1] TEX. PROP. CODE §§ 28.001–.010.

9

As a basis for its recovery, MMR pointed to Article 10.2, as modified by the Special Terms in Part IV of the Contract. MMR claimed that "Article 10.2 of the Contract provides MMR the right to additional compensation and a remedy in the event that it is forced to recover its schedule due to no fault of its own." MMR also asserted that Article 10.2 in Part IV–Special Terms was "specifically negotiated and modified" by the parties "to provide clarity on situations where MMR may receive additional compensation for the actions or inactions of others." MMR claimed that, under modified Article 10.2, "[w]hen Dow and/or others over whom it was responsible delayed MMR, then DOW became obligated to compensate MMR for all costs incurred because of such delays." MMR alleged that it had incurred additional costs of $17,906,701.69 to recover the schedule at Dow's direction and claimed that Article 10.2, as modified in Part IV–Special Terms, entitled it to be compensated by Dow for the additional costs.

Dow answered the suit, generally denying the allegations and asserting numerous affirmative defenses, including release and waiver. Dow also filed a traditional motion for summary judgment. As summary-judgment grounds, Dow asserted that (1) MMR had released its breach-of-contract claim against Dow because "[e]ach Contract Modification expressly and unambiguously releases all claims for additional compensation under the Contract"; (2) MMR waived its breach-of-contract claim by failing to provide timely notice as required by Article

10

18.0 in the Contract; (3) MMR's quantum-meruit claim is precluded by law "because there is an express contract governing the dispute between the parties, and there is no exception that would allow a quantum meruit claim to apply in this situation"; and (4) MMR's claim under the Prompt Payment to Contractors Act failed because MMR is not entitled to compensation under the Contract. To support its motion, Dow relied on factual assertions in MMR's petition and offered as summary-judgment evidence (1) the Contract, (2) the Contract Modifications, and (3) MMR's correspondences sent to Dow in May and June 2017, requesting additional compensation above the fixed-contract price.

In its response to Dow's motion for summary judgment, MMR asserted that the notice provisions found in Articles 15.0 and 18.0 of the Contract did not apply to MMR's claim for the costs that it had incurred to recover the schedule at Dow's direction. MMR claimed that the dispute was governed by Article 10.2 as modified in Part IV–Special Terms of the Contract. Specifically, MMR pointed to the last sentence of modified Article 10.2, which states, "*[I]f Contractor's performance of Work is delayed by Company, Owner, or other contractors, vendors or suppliers for which Company is responsible, then Contractor shall be compensated for such steps directed by Company to recover the schedule.*" MMR asserted that Article 10.2 was "not conditioned" on the notice provisions in Articles 15.0 or 18.0. Instead, MMR claimed that its compensation for its acceleration costs was mandatory, not

11

discretionary, because the parties "specifically negotiated for the right to mandatory compensation [under Article 10.2] if MMR was ordered by Dow to recover the schedule (i.e., accelerate performance)."

MMR also asserted that its breach-of-contract claim was not subject to the release found in the Contract Modifications. MMR contended that the release applied only to "claims" asserted under Article 18.0 for changes to the scope of the work performed. MMR argued that, because its demand for acceleration costs was not a claim related to a change in the scope of its work, its claim was not an Article 18.0 claim. MMR further asserted that the release did not apply because MMR had not been able to determine the total amount of its costs at the time it signed the Contract Modifications containing the release.

In addition, MMR disputed Dow's argument that summary judgment was proper on MMR's claim for quantum meruit because there was an express contract between the parties covering the dispute. MMR asserted that, when a plaintiff has partially performed a contract but is prevented by the defendant's breach from completing its performance, the plaintiff may still recover based on quantum meruit. MMR claimed that was the circumstance here because Dow had breached the Contract by failing to compensate MMR for its acceleration costs, which had prevented MMR from completing the last steps of the Contract. Finally, MMR asserted that its claim under the Prompt Payment to Contractors Act was valid

12

because Dow had not shown that it was entitled to summary judgment on MMR's breach-of-contract claim.

To support its response, MMR offered the affidavit of its project manager. The project manager testified about MMR's work on the project, the delay caused by Dow's other contractors, Dow's instruction to MMR to "recover" or "accelerate" the schedule, and the amount of acceleration costs incurred by MMR.

The trial court granted Dow's motion for summary judgment, stating in its order that it had "considered the motion, the applicable law, the arguments of counsel, if any, and all other supporting and opposing papers." This appealed followed.

## Summary Judgment

In four issues, MMR contends that the trial court erred in granting summary judgment in Dow's favor.

### A.    Standard of Review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015). When a defendant moves for summary judgment, it must either (1)

disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). An issue is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the facts in the record. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). To determine whether there is a fact issue in a motion for summary judgment, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as here, the trial court's order granting summary judgment does not specify the grounds on which it was granted, it must be affirmed if any of the grounds asserted are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

14

**B.     Release of MMR's Breach-of-Contract Claim**

In its second issue, MMR asserts that the trial court erred in granting summary judgment on its breach-of-contract claim because Dow did not conclusively establish its affirmative defense of release.[2] *See* TEX. R. CIV. P. 94 (providing that plea of release is affirmative defense).

### 1.     *Applicable Law*

A release is a written agreement that discharges a duty or obligation owed to one party to the release. *Henry v. Masson*, 333 S.W.3d 825, 843–44 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). "[A release] operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Like any other agreement, a release is a contract subject to the rules of contract construction. *Henry*, 333 S.W.3d at 844. When construing a contract, the court must give effect to the true intentions of the parties as expressed in the written instrument. *Id.* (citing *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996)).

---

[2]     We begin with MMR's second issue because its first issue, as stated in the "Issues Presented" portion of MMR's brief, is a global assertion that "[t]he trial court reversibly erred in granting Dow's Traditional Motion for Summary Judgment."

The contract must be read as whole, not by isolating a certain phrase, sentence, or section of the agreement. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Henry*, 333 S.W.3d at 844. The court must examine the entire contract to harmonize and give effect to all its provisions so that none are rendered meaningless and no single provision controls. *Henry*, 333 S.W.3d at 844 (citing *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied)). We give the release's language its plain grammatical meaning unless doing so would defeat the intent of the parties. *Id.* (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). A contract is unambiguous if it can be given a definite legal meaning. *Id.* (citing *Doe*, 283 S.W.3d at 458).

General categorical release clauses are narrowly construed. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). To effectively release a claim, the releasing instrument must "mention" the claim to be released. *Id.* In construing a contract, the court may not rewrite it or add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *Henry*, 333 S.W.3d at 844. Claims that are not clearly within the subject matter of the release are not discharged, even if they exist when the release is executed. *Henry*, 333 S.W.3d at 844 (citing *Brady*, 811 S.W.2d at 938; *Baty*, 63 S.W.3d at 848). It is not necessary, however, that the parties anticipate and identify every potential cause of action relating to the

16

subject matter of the release. *Keck, Mahin & Cate v. Nat'l Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000). Although releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims and future damages. *Id.*

### 2. Analysis

Here, each of the twelve Contract Modifications signed by the parties from April 2016 to May 2017 contained the following release:

> THIS CONTRACT MODIFICATION REPRESENTS FINAL ADJUSTMENT FOR ANY AND ALL AMOUNTS DUE OR TO BECOME DUE TO CONTRACTOR FOR CHANGES REFERRED TO HEREIN. CONTRACTOR FURTHER RELEASES ALL OTHER CLAIMS, IF ANY (EXCEPT THOSE CLAIMS PREVIOUSLY SUBMITTED IN WRITING IN STRICT ACCORDANCE WITH THE CONTRACT), FOR ADDITIONAL COMPENSATION UNDER THIS CONTRACT, INCLUDING WITHOUT LIMITATION ANY RIGHTS CONTRACTOR MAY HAVE FOR ADDITIONAL COMPENSATION ARISING OUT OF DELAYS OR DISRUPTION OF CONTRACTOR'S SCHEDULE AS MAY HAVE ARISEN PRIOR TO THE DATE OF THIS CONTRACT MODIFICATION. UNLESS OTHERWISE EXPRESSLY PROVIDED HEREIN, THE TIME OF COMPLETION AND ALL OTHER TERMS AND CONDITIONS OF THE CONTRACT REMAIN UNCHANGED.

In the trial court, Dow asserted that the release language contained in the Contract Modifications entitled it to summary judgment on MMR's breach-of-contract claim. Along with the Contract, Dow offered the Contract Modifications as summary-judgment evidence and underscored that MMR signed the last Contract

17

Modification on May 3, 2017, nearly two months after MMR completed its work under the Contract on March 10, 2017.

We agree with Dow that the May 3 release alone extinguished MMR's right to bring its breach-of-contract claim. *See Page Petroleum*, 853 S.W.2d at 508. The release made clear that it applied not only to "all amounts due" to MMR for "changes" made in the respective Contract Modification but also applied to "all other claims . . . for additional compensation under this contract, including without limitation any rights contractor may have for additional compensation arising out of delays or disruption of contractor's schedule as may have arisen prior to the date of this contract modification." (Capitalization omitted.) MMR's claim for additional compensation for its costs arising out of delays to its schedule, allegedly caused by the dilatory conduct of Dow's other contractors, falls squarely within the subject matter of the release as indicated in its plain language. *See Brady*, 811 S.W.2d at 938 ("In order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released," meaning that claim must fall "within the subject matter of the release.").

MMR disagrees that its breach-of-contract claim falls within the scope of the release. MMR does not suggest that the release is ambiguous; rather, it asserts that its breach-of-contract claim, seeking additional compensation for the costs it incurred to recover the delayed schedule caused by Dow's other contractors, is not

18

a claim that falls within the subject matter of the release. MMR contends that only qualifying "claims" under Articles 15.0 and 18.0 of the Contract are "claims" subject to the release.

MMR points out that "Articles 15.0 and 18.0 establish a process for MMR to submit 'Claims,' including deadlines by which written notice must be provided to Dow." MMR asserts that the Contract Modifications containing the release are a product of the claims process under Article 18.0. MMR contends that, in contrast, Article 10.2, on which MMR filed suit, does not include a process for submitting claims. MMR emphasizes that, while the release "covers claims for additional compensation under the Contract," it excludes claims that were "previously submitted in writing in strict accordance with the Contract." MMR asserts, "The exclusionary language is key; it confirms the release covers only 'Claims' under Articles 15.0 and 18.0 of the Contract—claims for 'changes' and 'other claims'— *not* MMR's request for compensation of its acceleration costs under [Article] 10.2 of the Special Terms." We disagree.

"A contract's plain language controls, not what one side or the other alleges they intended to say but did not." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019) (internal quotation marks omitted); *see Union Pacific R.R. v. Novus Int'l, Inc.*, 113 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("We glean intent from what the parties said in their

contract, not what they allegedly meant."). Contrary to MMR's construction, the plain language of the release does not state that the claims released by MMR are limited to claims under Articles 15.0 and 18.0. And we cannot add language to a contract under the guise of interpretation. *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 638 (Tex. App.—Dallas 2012, pet. denied); *see Schaefer*, 124 S.W.3d at 162 ("[W]e may neither rewrite the parties' contract nor add to its language.").

We also must give effect to all the terms in the release so that none are rendered meaningless, *see New Hampshire Ins. Co. v. Mora*, 500 S.W.3d 132, 137 (Tex. App.—Houston [1st Dist.] 2016, pet. denied), including those that indicate the scope and breadth of the release, *see Keck*, 20 S.W.3d at 698 (recognizing broad-form releases are permissible if subject matter of release is identified). Here, the plain language of the release states that in addition to claims related to the subject matter of the Contract Modification, MMR agreed to release "*all* other claims" under the Contract for additional compensation, which included "*without limitation* any rights contractor may have for additional compensation arising out of delays or disruption of [MMR's] schedule as may have arisen prior to the date of this contract modification." (Emphasis added.)

The only claims exempted from the release were those that MMR had "previously submitted in writing in strict accordance with the Contract." In this regard, the release allowed MMR to preserve its claims for additional compensation

20

under the Contract that MMR had already taken steps to pursue while providing Dow with assurance that there were no other outstanding claims for which it needed to account. *See Geheb v. TransCanada Keystone Pipeline, LP*, No. 09-17-00107-CV, 2018 WL 4779040, at *3 (Tex. App.—Beaumont Oct. 4, 2018, no pet.) (mem. op.) ("[W]e have harmonized any conflicts between the various sentences in the release so that none are rendered meaningless.").

Construing the term "claims" in the release to be defined and limited by the type of claims exempted from the release, as advocated by MMR, is not a reasonable construction of the provision. The plain language of the release controls. *See Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 888. And, under its plain language, MMR's breach-of-contract claim, which seeks additional compensation under the Contract arising out of delays or disruption of MMR's schedule caused by Dow's other contractors, falls within the express scope of the release. *See Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434–35 (Tex. 1997) (holding that, because parties agreed to release all claims related to corrective action taken by hospital against physician "and any other matter relating to [physician's] relationship with [hospital]," all claims relating to physician's relationship with hospital were released).

MMR also asserts that Dow was not entitled to summary judgment based on its affirmative defense of release because "it is untenable to conclude that the parties

21

intended at the time of each Contract Modification for the release to apply to MMR's acceleration costs, which were still ongoing and incapable of calculation until the Project was complete." However, it is well-settled under Texas law that, although releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims and future damages. *Keck*, 20 S.W.3d at 698; *Baty*, 63 S.W.3d at 848. Moreover, MMR stated in its petition and in its summary-judgment response that it achieved mechanical completion of its work on March 10, 2017. The summary-judgment record shows that, nearly two months after completing its work, MMR signed the last Contract Modification containing the release on May 3, 2017. Thus, it is not "untenable" to conclude that MMR released its breach-of-contract claim when it signed the Contract Modification on May 3, 2017.

Finally, MMR argues that Dow did not conclusively establish that the release applied to MMR's claim for additional compensation because Dow did not offer sufficient evidence to show that the exception to the release did not apply. As mentioned, the release provided that "THOSE CLAIMS PREVIOUSLY SUBMITTED IN WRITING IN STRICT ACCORDANCE WITH THE CONTRACT" were excepted from the release. MMR contends that Dow failed to offer evidence to conclusively establish that "MMR had not previously submitted its request [for additional compensation] in writing in strict accordance with the

Contract" before it signed the Contract Modifications, including the May 3, 2017 modification.

In its petition, MMR asserted that it completed its work on Dow's project on March 10, 2017. MMR also asserted that it submitted its "Initial Notification" to Dow, seeking an additional $17.8 million in compensation, on May 27, 2017. Dow relied on these statements in its motion for summary judgment as proof of these dates. As summary-judgment evidence, along with the Contract and Contract Modifications, Dow offered the "Initial Notification," dated May 27, 2017, and MMR's two follow-up correspondences from June 2017.

In its summary-judgment response, under the heading "undisputed facts," MMR again indicated that it completed its work on March 10, 2017 and that it had submitted its initial notification of its demand for additional compensation on May 27, 2017. MMR's response was supported by the affidavit of its project manager, who testified that MMR sent "Initial Notification" to Dow on May 27, 2017.

MMR asserts that Dow could not rely on MMR's statements in its petition regarding the dates MMR had completed its work and first sent notice to Dow seeking additional compensation. Dow counters that the statements in the petition were judicial admissions on which it was entitled to rely to establish that the exception in the release did not apply. Dow contends that the judicial admissions, along with its summary-judgment evidence, show that the exception in the release

23

did not apply because MMR did not send notice of its claim to Dow until after its work was complete and it had signed the last Contract Modification containing the release. We agree with Dow.

The Supreme Court of Texas has defined a judicial admission as "[a]ssertions of fact, not plead in the alternative, in the live pleadings of a party." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). "A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact." *Id.*; *In re Spooner*, 333 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) ("A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it."). In *Wolf*, the supreme court determined that the assertions of fact in Wolf's summary-judgment response and counter-motion for summary judgment, together with his affirmative agreement in his appellate brief to the admitted fact, constituted a binding judicial admission for summary-judgment purposes. *See Wolf*, 44 S.W.3d at 568 (holding, in mortgage-foreclosure case, that Wolf judicially admitted note's acceleration date); *see also Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 534 (Tex. 2017) (holding, for purposes of determining state agency's sovereign immunity, that plaintiff judicially admitted in

his petition that doctors were agency's employees because he alleged that agency acted "through" its doctors).

Here, MMR judicially admitted the dates on which certain events occurred. In its petition, MMR stated that it completed its work on March 10, 2017 and that it sent its "Initial Notification" of its claim to Dow on May 27, 2017. MMR repeated these same factual assertions in its summary-judgment response, characterizing them as "undisputed facts." And, to support its response, MMR offered the affidavit of its project manager who testified that "Initial Notification" of MMR's claim for additional compensation was submitted to Dow on May 27, 2017. Given MMR's judicial admissions and the summary-judgment evidence, Dow conclusively established that the exception to the release did not apply because MMR did not send notice of its claim for additional compensation until after the release was signed. *See Hansen*, 525 S.W.3d at 681 (explaining that issue is conclusively established if reasonable minds could not differ about conclusion to be drawn from the facts in record.)

We conclude that Dow met its summary-judgment burden to conclusively prove its affirmative defense of release, thereby extinguishing MMR's breach-of-contract claim. Accordingly, we hold that the trial court properly granted summary judgment on that cause of action.

We overrule MMR's second issue.[3]

## C.      Prompt Payment to Contractors Act

In its third issue, MMR asserts that the trial court erred by granting summary judgment on MMR's claim that Dow violated the Prompt Payment to Contractors Act. *See* TEX. PROP. CODE §§ 28.001–.010. The Act requires an owner to make a payment in response to a written payment request from a contractor "for an amount that is allowed to the contractor under the contract." *Id.* § 28.002(a). In its petition, MMR asserted that it was entitled to payment under the Act because Dow "received a written payment request from MMR that is allowed under the Contract for properly performed work." *See id.* On appeal, MMR argues that, because the trial court erred in granting summary judgment on its breach-of-contract claim, the trial court likewise erred in granting summary judgment on its statutory prompt-payment claim.

We have held that the trial court properly granted summary judgment on MMR's breach-of-contract claim. Because Dow does not owe MMR payment under

---

[3]      In its second issue, MMR also asserts that Dow did not conclusively prove that its affirmative defense of waiver barred MMR's breach-of-contract claim. Because we hold that summary judgment was proper for that claim based on the affirmative defense of release, we need not discuss the sub-point regarding waiver. *See* TEX. R. APP. P. 47.1 (requiring appellate court opinions to address only issues raised and necessary to final disposition of appeal).

26

the Contract, the trial court properly granted summary judgment on MMR's Prompt Payment to Contractors Act claim as well. *See id.*

We overrule MMR's third issue.

## D. Quantum Meruit

In its fourth issue, MMR contends that the trial court erred in granting summary judgment on its claim for quantum meruit.

Quantum meruit implies a contract in circumstances where the parties neglected to form one, but equity nonetheless requires payment for beneficial services rendered and knowingly accepted. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). As a result, "[a] party generally cannot recover under quantum meruit where there is a valid contract covering the services or materials furnished." *Id.* "The rationale behind this rule [known as the express-contract rule] is that parties should be bound by their express agreements, and recovery under an equitable theory is generally inconsistent with an express agreement which already addresses the matter." *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 620–21 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Here, MMR does not dispute that there was an express contract covering the services it provided to Dow but instead asserts that Dow did not sufficiently show that exceptions to the express-contract rule did not apply.

The Supreme Court of Texas has recognized only three exceptions to the general rule that an express contract bars recovery under quantum meruit. First, recovery may be permitted "when a plaintiff has partially performed an express contract but, because of the *defendant's* breach, the plaintiff is prevented from completing the contract." *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (emphasis in original). Second, "[r]ecovery in quantum meruit is sometimes permitted when a plaintiff partially performs an express contract that is unilateral in nature." *Id.* at 937. And finally, a breaching plaintiff in a construction contract can recover the reasonable value of services less any damages suffered by the defendant if the defendant accepts and retains the benefits arising as a direct result of the plaintiff's partial performance. *Id.* Each of these exceptions allows for recovery in quantum meruit only in situations in which the plaintiff partially, rather than fully, performed its obligations under the contract. *See id.* at 936–37.

In its motion for summary judgment, Dow asserted that none of the exceptions applied to the express-contract rule because MMR had fully performed under the Contract, pointing to MMR's judicial admission that it had completed its work under the Contract. MMR responded—and now asserts on appeal—that completing its work under the Contract is not the same as fully performing under the Contract. MMR contended in its summary-judgment response, and continues to assert here, that Dow did not offer evidence of MMR's full performance. MMR asserts that the

28

Contract also required MMR to complete other post-work tasks, including submitting a final invoice, issuing a notice of completion, and a providing a final payment release.

In its reply to MMR's response, Dow again pointed to MMR's petition, citing MMR's factual assertion that it had performed its obligations under the Contract. The factual assertion was clear and unequivocal, barring MMR from later disputing the fact. *See Wolf*, 44 S.W.3d at 568. MMR did not plead any factual alternative that it had not fully performed its contractual obligations. MMR's judicial admission that it had performed its obligations under the Contract, coupled with its judicial admission that it fully completed its work, which was the subject matter of the Contract and the task for which MMR seeks compensation, was sufficient to conclusively establish that the exceptions to the express-contract rule did not apply and that MMR was precluded as a matter of law from recovering under quantum meruit. *See Truly*, 744 S.W.2d at 936. We hold that the trial court properly granted summary judgment on MMR's quantum-meruit claim.

We overrule MMR's fourth issue. We also overrule MMR's first issue, which globally asserts that the trial court erred when it granted Dow's motion for summary judgment.

**Conclusion**

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.