

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00336-CV

_____

DENISE PAULINE GRAY, Appellant

V.

LARRY CROSBY, Appellee

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. C2022369

---

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

This lawsuit arose from a dispute concerning a residential lease agreement that contained an option to purchase. After Appellant Denise Pauline Gray, the tenant under the aforementioned lease, failed to vacate the premises following the lease's termination, Appellee Larry Crosby sued her for breach of contract and for declaratory relief. Gray, who maintained that she had exercised the purchase option before the lease terminated, filed a breach-of-contract counterclaim seeking specific performance of the purchase option. The trial court granted Crosby summary judgment on his affirmative claims and on Gray's counterclaim. Gray timely appealed. We will affirm.

## I. BACKGROUND

In March 2020, Gray and Crosby—who are both licensed realtors—entered into a written lease agreement whereby Gray agreed to rent a home that Crosby owned in Granbury (the Property). The lease contained the following provision granting Gray the option to purchase the Property:

> [Crosby] does hereby agree to provide [Gray] an option to purchase the [Property] for the agreed purchase price of $399,000.00 after [the] 1[-]year anniversary date from move in. Option to purchase extended until lease terminates and/or tenant vacates. Election to purchase must be submitted to [Crosby] prior to 90 days before termination date of the lease. Full security deposits will be credited toward the purchase price at closing.

While the purchase-option provision required Gray to "submit[]" her election to purchase to Crosby, it did not specify how it was to be "submitted." However, the

2

lease's generally applicable "notices" paragraph provided that "[a]ll notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission."

Further, although the purchase-option provision required that Gray must exercise her option "prior to 90 days before" the lease's termination date, the lease did not have a fixed termination date. Rather, it had a primary term that ran from April 1, 2020, through July 31, 2022, but if neither party gave the other written notice of termination at least 30 days before the primary term's expiration, then the lease automatically and perpetually renewed on a month-to-month basis until one of the parties provided the other with a written termination notice.

Because neither party provided the other with a written termination notice during the primary term, the lease automatically renewed on a month-to-month basis on August 1, 2022. On that date, Crosby hand-delivered a written termination notice to Gray. The notice stated that her "last day to rightfully occupy the premises" was August 31, 2022, and that if she failed to vacate the Property by that date, she would be required to pay holdover rent.

Gray did not vacate the Property by August 31, 2022. Instead, she claimed that the lease had not terminated and refused to pay any holdover rent. Additionally, she maintained that because she had purportedly exercised her purchase option, she had the right to purchase the Property at the agreed-upon $399,000 price.

3

Crosby sued Gray for declaratory relief and breach of contract. Specifically, Crosby asked the trial court to declare that (1) the lease terminated on August 31, 2022; (2) the deadline for Gray to exercise her purchase option was June 2, 2022 (i.e., the 90th day before August 31, 2022); (3) because Gray failed to notify Crosby that she was exercising her purchase option before this deadline, Crosby was not obligated to sell the Property to her; and (4) Gray no longer had any right to possess the Property. Regarding his breach-of-contract claim, Crosby alleged that Gray had breached the lease by failing to pay holdover rent as required.

Gray responded with a general denial and several affirmative defenses. She also asserted a breach-of-contract counterclaim against Crosby based on his refusal to sell her the Property for the $399,000 price reflected in the purchase option. She sought a judgment ordering Crosby to specifically perform his purported obligation to sell her the Property at that price.

Shortly after filing suit, Crosby served Gray with requests for admissions. Gray failed to respond by the applicable deadline. *See* Tex. R. Civ. P. 198.2(b). As a result, Gray was deemed to have admitted, among other things, that "at no time before June 3, 2022, did [she] send an email, letter, or text message to [Crosby] that state[d] that [she was] electing to exercise [her] right to purchase the Property." *See* Tex. R. Civ. P. 198.2(c). Gray filed a "Motion to Undeem Deemed Admitted Admissions," but the trial court denied it.

4

After the trial court denied Gray's request to withdraw her deemed admissions, Crosby filed a motion asking the trial court to reconsider its earlier denial of his first motion for partial summary judgment, which had focused specifically on his declaratory-judgment claim. Following a hearing,[1] the trial court signed an order granting the motion and making the following declarations:

(1) The lease terminated on August 31, 2022;

(2) To exercise her option to purchase the property, Gray had to submit written notice to Crosby of her intent to do so no later than June 2, 2022;

(3) Crosby has no obligation to sell the residence to Gray because [she] did not provide him with her written notice of intent by June 2, 2022; and

(4) Gray has no present right to purchase or possess the property.

At the same time that he filed his motion to reconsider, Crosby also filed a second motion for partial summary judgment specifically focusing on his breach-of-contract claim. In this motion, Crosby asserted that Gray had continued to occupy

---

[1]The trial court held a joint hearing on Crosby's motion to reconsider and his second motion for partial summary judgment (discussed below). Although the trial court's official court reporter has advised us that he reported this hearing—and six others in this case—Gray elected not to include the reporter's records from any of these hearings in the appellate record. While the Texas Supreme Court has held that a reporter's record is neither necessary nor appropriate to the purposes of a summary-judgment hearing, *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 291 n.141 (Tex. 2004), the filing of a reporter's record of a summary-judgment hearing—if available—may nevertheless aid an appellate court by, inter alia, helping to clarify the parties' arguments or providing additional details regarding the trial court's rulings, *see, e.g.*, *Gonzales v. Williams*, No. 11-17-00130-CV, 2019 WL 2710046, at *1 n.3 (Tex. App.—Eastland June 28, 2019, no pet.) (mem. op.).

the Property after the lease terminated and that she had breached the lease by failing to pay him holdover rent. Following a hearing,[2] the trial court signed an order granting Crosby's second partial-summary-judgment motion.

Crosby filed a third partial-summary-judgment motion addressing Gray's counterclaim. Ultimately, the trial court signed an order granting this motion and rendering judgment that Gray take nothing on her counterclaim.

After the trial court granted all three of Crosby's partial-summary-judgment motions, the "sole remaining issue" in the case was Crosby's request for attorney's fees and costs. Following a bench trial on that issue, the trial court signed a final judgment awarding Crosby attorney's fees and costs and memorializing its phased disposition of the case. This appeal followed.

## II. DISCUSSION

On appeal, Gray advances two arguments to support her contention that the trial court erred by granting Crosby summary judgment on his breach-of-contract claim.[3] First, she argues that she orally exercised her purchase option and that the trial

---

[2]*See supra* note 1.

[3]Gray's brief enumerates only one issue—whether the trial court "properly granted" Crosby summary judgment "on the issue of liability for breach of contract." Nevertheless, because we liberally construe briefs and because the argument and statement-of-facts sections of Gray's brief flesh out her single issue, we conclude that she has fairly raised the two arguments outlined herein, and we will address both of them. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *Perry v. Cohen*, 272 S.W.3d 585, 587–88 (Tex. 2008) ("[W]e liberally construe issues presented to

6

court erred by concluding that the lease required her to communicate her election in writing. Second, she argues that Crosby's notice of termination was defective and that, consequently, the lease never terminated. Neither of these arguments has merit.[4]

## A. STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable

obtain a just, fair, and equitable adjudication of the rights of the litigants."); *see also Espinoza Valle v. Hertz Elec., LLC*, No. 03-20-00056-CV, 2021 WL 1991268, at *2 n.3 (Tex. App.—Austin May 19, 2021, no pet.) (mem. op.) (liberally construing appellants' brief and addressing "issue as stated and fairly raised" in the brief's argument section as opposed to limiting analysis to the narrowly framed issue as stated in the brief's "issues presented" section).

[4]As Crosby points out, Gray's brief's argument section—which contains only three paragraphs—lacks substantive legal analysis and record citations to support certain of her contentions. Thus, Gray has arguably forfeited her appellate arguments. *See* Tex. R. App. P. 38.1(i) (providing that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) (admonishing that the "[f]ailure to cite applicable authority or provide substantive analysis waives an issue on appeal"); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing). But because Gray's arguments lack merit, we overrule them on that basis. *See Zermeno v. State*, No. 14-19-00789-CR, 2021 WL 4472528, at *3 n.4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op., not designated for publication) (exercising discretion to address issue on the merits despite appellant's inadequate briefing but admonishing that failure to comply with briefing requirements "usually results in the waiver of an issue"); *see also Eco Planet, LLC v. ANT Trading*, No. 05-19-00239-CV, 2020 WL 6707561, at *5 (Tex. App.—Dallas Nov. 16, 2020, pet. denied) (mem. op.) (Osborne, J., concurring) ("Appellate courts have the discretion to waive issues for inadequate briefing." (first citing *Fredonia State Bank*, 881 S.W.2d at 284; and then citing *Horton v. Stovall*, 591 S.W.3d 567, 569–70 (Tex. 2019)); *cf. Perry*, 272 S.W.3d at 587 ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible.").

to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on its own cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). But to be entitled to summary judgment on a defendant's counterclaim, a plaintiff must conclusively negate at least one of the counterclaim's essential elements. *See EM Bldg. Contractors Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-19-00153-CV, 2020 WL 4592791, at *3, *17 (Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.) (citing *Adams v. Tri–Continental Leasing Corp.*, 713 S.W.2d 152, 153 (Tex. App.—Dallas 1986, no writ)).

### B. BREACH-OF-CONTRACT ELEMENTS

"The essential elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained as a result of the breach." *Berdin v. Allstate Ins. Co.*, No. 02-22-00426-CV, 2023 WL 7037619, at *6 (Tex. App.—Fort Worth Oct. 26, 2023, no pet.) (mem. op.) (citing *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. dism'd)). Because Crosby presented summary-judgment evidence supporting each of these

8

elements,[5] Gray bore the burden to raise a genuine issue of material fact concerning at least one of them. *See Fernandez v. Indep. Bank*, No. 02-20-00375-CV, 2021 WL 4621758, at *2 (Tex. App.—Fort Worth Oct. 7, 2021, no pet.) (mem. op.) (citing *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018)).

Gray advances two arguments to support her contention that a genuine issue of material fact exists regarding the third element—whether she breached the lease. But both of these arguments run counter to the established rules of contractual interpretation and are therefore unpersuasive.

## C.  THE LEASE'S WRITTEN-NOTICE REQUIREMENT

First, Gray argues that the lease's purchase-option provision did not require her to notify Crosby in writing that she had elected to purchase the Property. According to Gray, because she had orally exercised her purchase option before Crosby delivered his notice terminating the lease, the lease never terminated, and she therefore did not

---

[5]Crosby attached to his second summary-judgment motion a copy of the fully executed lease as well as his affidavit stating that (1) he entered into the lease with Gray in March 2020; (2) Gray continued to reside at the Property as of the date that the affidavit was signed; (3) he had hand-delivered a written notice—a true and correct copy of which was attached to his affidavit—to Gray stating that he was terminating the lease effective August 31, 2022; (4) Gray had "failed to timely leave" the Property after the lease's termination; and (5) Gray had never paid him any holdover rent or late fees. He also attached a transcript of Gray's June 2023 deposition in which she acknowledged that the lease had commenced in April 2020, that Crosby had hand-delivered a notice terminating the lease effective August 31, 2022, and that she continued to live on the Property after August 31, 2022.

owe Crosby any holdover rent. But Gray could not orally exercise her purchase option.

The lease's purchase-option paragraph provides that to exercise the option, Gray must "submit" her "election" to Crosby "prior to 90 days before [the] termination date of the lease." While the purchase-option paragraph made it clear that to exercise her option, Gray was required to inform Crosby of her election at least 90 days before the lease terminated, it did not specify the manner in which Gray must do so.

But, as noted, the lease's generally applicable notices paragraph provided that "[a]ll notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission." Under the established rules of contract construction, the lease must be construed as a whole; thus, the purchase-option and notices paragraphs must be read together. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016). Taken together, these provisions make clear that Gray was required to inform Crosby of her election to purchase the Property in writing—the only manner in which the parties could send notices under the lease.

In her briefing, Gray implies that because—unlike certain other paragraphs in the lease—the purchase-option paragraph does not use the term "notice," she was not required to communicate her election in writing. But this hypertechnical reading of the contract ignores the common, ordinary meaning of the word "notice." *See Anadarko Petrol. Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192 (Tex. 2019) (instructing

10

that courts must give undefined contractual terms their "common, ordinary meaning"); *cf. Thomasson v. Kirk*, 859 S.W.2d 493, 496 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (rejecting interpretation of a will that involved "isolating certain of [the testator's] words in a kind of hypertechnical vacuum" because it obscured his clear intent).  Black's Law Dictionary defines (1) "notice" as "[l]egal notification required by law or agreement," (2) "notification" as "[a] formal announcement of a legally relevant fact, action, or intent," and (3) "notify" as "[t]o inform (a person or group) in writing or by any method that is understood."  *Notice*, *Notification*, *Notify*, Black's Law Dictionary (12th ed. 2024).  Here, the purchase-option paragraph provides that for Gray to exercise her option, she must inform (i.e., notify) Crosby of her election (i.e., her legally relevant intent) to purchase the Property.  Thus, even though the word "notice" does not appear in the purchase-option paragraph, any fair reading of this paragraph makes clear that to exercise her purchase option, Gray had to provide notice of her election to Crosby.  And under the lease's terms, this notice—like all other notices—had to be in writing.

In sum, because the lease required Gray to notify Crosby in writing of her election to purchase the Property, she cannot raise a fact issue as to whether she timely exercised her purchase option—or the dependent question of whether she breached the lease by failing to pay holdover rent—by claiming that she orally submitted her election to Crosby.

## D. EFFECTIVENESS OF CROSBY'S TERMINATION NOTICE

In her second argument, Gray contends that because Crosby's termination notice was defective, the lease never terminated. According to Gray, the lease's termination-notice paragraph—which provides that a party may terminate the lease on 30 days' written notice after the expiration of the primary term—conflicts with and renders meaningless the purchase-option paragraph, which requires Gray to submit her election to purchase the Property "prior to 90 days before" the lease's termination date. Thus, Gray asserts that the lease must be construed as requiring Crosby to give her "notice of 90 days plus a reasonable time" to terminate the lease. We disagree.

When construing a contract, our primary concern is to give effect to the parties' true intent as expressed in the instrument. *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied). "In doing so, we must examine and consider the entire contract in an effort to harmonize and give effect to all provisions so that none are rendered meaningless." *Id.* If two provisions of a contract are in irreconcilable conflict, we may apply certain rules to resolve the incongruity. *See, e.g.*, *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 472 n.50 (Tex. 2011) (citing *Williston on Contracts* and observing the principle that where a provision in a preprinted contract irreconcilably conflicts with a handwritten addition made by a party, the handwritten provision will control); *McCreary v. Bay Area Bank & Tr.*, 68 S.W.3d 727, 731–32 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (recognizing the rule of contract construction that "when there is a conflict

12

between two provisions, the specific provision controls over the general provision"). But we may not rewrite a contract or add to its language under the guise of interpreting it. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 889 (Tex. 2021); *see Fischer*, 479 S.W.3d at 239.

Contrary to Gray's assertion, the lease's termination-notice paragraph does not render the purchase-option paragraph meaningless. Indeed, because the purchase-option paragraph is silent regarding the amount of notice that a party must provide before terminating the lease, it does not even conflict with the termination-notice paragraph, and the two provisions are easily harmonized.

The lease's primary term—during which Crosby could not unilaterally terminate the lease unless Gray defaulted—spanned from April 1, 2020, to July 31, 2022. Per the purchase-option paragraph, Gray had the option to purchase "after [the] 1[-]year anniversary date from move in," but, as noted, she had to provide notice of her election to Crosby at least 90 days prior to the lease's termination date. Thus, she had the guaranteed and unilateral power to exercise her purchase option from April 1, 2021, through May 1, 2022—the date that is 90 days before the primary term's expiration date. If Gray decided not to exercise her option during that 13-month period, she still had the option to purchase the Property thereafter, but at that point, she assumed the risk that Crosby would effectively nullify her purchase option by exercising his right to terminate the lease—an action he would be inclined to take if the market value of the Property had significantly increased.

13

Thus, the termination-notice paragraph does not render the purchase-option paragraph meaningless; rather, reading the two paragraphs together gives effect to the reasonable bargain that the parties struck. To accept Gray's proposed construction of the lease as requiring Crosby to provide more than 30 days' notice of termination would be to rewrite it under the guise of interpreting it—something we cannot do. *See Sundown Energy LP*, 622 S.W.3d at 889.

Having rejected Gray's argument that Crosby was required to provide more than 30 days' notice to terminate the lease, we conclude that Gray failed to raise a genuine issue of material fact as to whether Crosby's termination notice was defective—or the dependent question of whether Gray breached the lease by failing to pay holdover rent. Accordingly, the trial court did not err by awarding Crosby summary judgment.[6]

## III. CONCLUSION

Having rejected Gray's appellate arguments, we affirm the trial court's judgment.

---

[6]Because (1) Gray was deemed to admit that she had not exercised her purchase option in writing before June 2, 2022; (2) she could not orally exercise her purchase option; and (3) Crosby's termination notice was effective, meaning that the lease terminated on August 31, 2022, Crosby conclusively negated the second element of Gray's counterclaim for breach of contract. Thus, the trial court did not err by granting Crosby summary judgment both on his affirmative claims and on Gray's counterclaim.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  December 12, 2024